**FRECKER, Plaintiff-Appellee, v. DAYTON (City) et, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 2018. Decided February 19, 1949.

Nicholas F. Nolan, Dayton, J. Paul McNamara, Columbus, for plaintiff-appellee.

Herbert S. Beane, City Atty., M. J. Gilbert, Joseph P. Duffy, Asst. City Attys., Dayton, for defendants-appellants.

## OPINION

By MILLER, PJ.

This is an appeal on questions of law and fact from the judgment of the Court of Common Pleas of Montgomery County, Ohio, finding Municipal ordinance No. 16059 of the City of Dayton, Ohio, to be null and void, in violation of the Constitution of the United States and the State of Ohio, and granting a permanent injunction restraining its enforcement.

The ordinance under consideration provides:

"A Ordinance. Prohibiting in the interest of public safety, the sale in the Parks, and on or from the Streets, Sidewalks, and alleys of the City of Dayton, Ohio, of certain commodities herein enumerated.

WHEREAS, the Commission of the City of Dayton, Ohio, deem it necessay and and in the public interest to reduce the hazards of injury to young children and to avoid traffic congestion in the parks, and on the streets, sidewalks and alleys of the City of Dayton, to prohibit the sale of certain commodities hereinafter enumerated; and

WHEREAS, it is necessary for the immediate preservation of the public peace, property, health and safety, that this ordinance take effect at an early date; therefore

BE IT ORDAINED BY THE COMMISSION OF THE CITY OF DAYTON:

Section 1. That the Code of General Ordinances of the City of Dayton, Ohio, be supplemented by the enactment of Section 288-1 and 288-2 to provide as follows:

Sec. 288-1. Excepting in any market stands, which now or may hereafter be licensed under the provisions of §§156 to 196 GC, both inclusive, and park concessions, now or hereafter granted by the City of Dayton, no person, firm or corporation, shall sell or offer to sell, in the parks, and on or from the streets, sidewalks and alleys of the City of Dayton, Ohio, any ice cream in any form, popsicles, ice sherberts or frozen desserts of any kind, and all kinds of soft drinks, such as pop, cola drinks or others, candies of any kind, hot dog or other sandwiches, and peanuts, popcorn, or other similar products.

Sec. 288-2. Penalty. Any person, firm or corporation, found guilty of the violation of this ordinance, shall be deemed guilty of a misdemeanor, and shall upon conviction thereof, be fined not less than Twenty-five Dollars ($25.00) and the costs of prosecution, or more than Fifty ($50.00) Dollars and the cost of prosecution, and each violation hereof shall constitute a separate offense.

Section 2. For the reasons stated in the preamble hereof, this ordinance is declared to be an emergency measure and shall take effect immediately upon its passage."

The petition, after alleging the capacity of the various defendants, alleges that:

"Plaintiff, Edward V. Frecker, does business as Scioto Valley Dairy and Ice Cream Company and has his principal place of manufacturing at 555 East Main Street, in the City of Columbus, Ohio.

Plaintiff is now, and for more than five years past has been, engaged in the manufacture and sale, at retail, of ice cream, ice cream products, frozen desserts and frozen confections (hereinafter referred to as 'products'), and is duly licensed to engage in such business under the provisions of §12730-1, et seq., GC. At all times herein mentioned, the plaintiff has engaged in the sale of said products in the manner herein described in the City of Columbus, Ohio, and part of the time, during the past five years, plaintiff has engaged

in the sale of said products in the cities of Springfield, Ohio, Zanesville, Ohio, Portsmouth, Ohio, Marion, Ohio, Bucyrus, Ohio, and Chillicothe, Ohio.

Plaintiff has in excess of $100,000.00 invested in plant and equipment in Columbus, Ohio for the manufacture of said products.

Since December 1, 1945, plaintiff has invested approximately $30,000.00 in vehicular equipment and other expenses to establish and operate his business in the City of Dayton, Ohio.

Plaintiff's products are manufactured, transported, sold and delivered under sanitary conditions, and such products are wholesome and nourishing food products.

Plaintiff's products are packaged in separate, individual sanitary containers.

Plaintiff sells the aforesaid products directly to the consuming public through salesmen and agents, who sell said products from vehicles propelled throughout the public streets of the aforesaid cities. Said vehicles are sanitary refrigerated, foot-propelled tricycles and handcarts.

Plaintiff's employees and agents make sales of the products from vehicles at the curb of the public streets or away from the vehicles on the sidewalks, and on private property.

Plaintiff's agents and employees are specially trained as to safety and sanitation in the sale of plaintiff's products.

At no time during the aforesaid period, did any of plaintiff's agents or employees or any person doing business with plaintiff's agents or employees, sustain any personal injury of any kind as a result of the operation of plaintiff's business.

By using only good quality materials and by employing precaution to insure sanitation, quality and perfection in its products, and by exercising care and safety in its method of merchandising said products, plaintiff has built up an extensive and profitable business.

On June 6, 1946, plaintiff was granted a special permit pursuant to the provisions of Section 752 of the Codified Ordinances of the City of Dayton, Ohio, authorizing plaintiff to sell and offer for sale, the aforesaid products for human consumption within the limits of the City of Dayton, Ohio.

Plaintiff intends to operate his business of selling the aforesaid products in the manner herein described, from vehicles propelled through the streets of the City of Dayton, Ohio.

On June 5, 1946, the City Commission of the City of Dayton, Ohio, enacted Ordinance No. 16059, which provides as follows:

\*　　　\*　　　\*　　　\*　　　\*

It is the duty of defendants, and the defendants will, unless restrained and enjoined by this Court, enforce the aforesaid

ordinance against plaintiff, his agents and employees, and arrest or cause the arrest of plaintiff, his agents and employees.

The enforcement of the aforesaid ordinance by the defendants against plaintiff, his agents and employees, will prohibit plaintiff from operating his business as above described in the City of Dayton, Ohio.

The aforesaid ordinance is invalid, contrary to law, and the Constitution of the United States and the Constitution of the State of Ohio, and is a violation of plaintiff's rights under law and said Constitutions.

The enforcement of said ordinance against the plaintiff, his agents and employees, will deprive plaintiff of his recognized and legal right to engage in a lawful and legitimate business, and will deprive the plaintiff of his liberty and property without due process of law and will unfairly and unlawfully discriminate against the plaintiff.

Plaintiff's business will suffer irreparable damages if said ordinance is enforced.

Plaintiff has no adequate remedy at law.

SECOND CAUSE OF ACTION.

Plaintiff for his second cause of action adopts and incorporates herein, as though fully rewritten, all the allegations of the first cause of action.

The aforesaid ordinance No. 16059 was not enacted by the City Commission of the City of Dayton, Ohio, in the interest of general public, but said ordinance was enacted by the City Commission of the City of Dayton, Ohio as a legislative measure to protect the business and profits of resident merchants who own and operate businesses located in the City of Dayton, Ohio, and who engage in the sale of the same or similar products manufactured and sold by the plaintiff.

The enforcement of the aforesaid ordinance will have the effect of stifling competition and will unfairly and unlawfully discriminate against the plaintiff to the benefit, favor and advantage of the resident merchants located in the City of Dayton, Ohio who sell the same or similar products by merchandizing and selling such products in a different manner."

The answer is a general denial, and further avers that the ordinance was adopted in the exercise of the power conferred upon the defendant by the Constitution and laws of the State of Ohio upon the City of Dayton to provide for the safety of its people in general and particularly upon the younger children to whom plaintiff's products are peculiarly attractive; that

the object of said ordinance is within the sovereign power of the City of Dayton, and that the means provided is calculated to accomplish that effect; that the ordinance is reasonable, not arbitrary or discriminating in any manner, and that it is intended to promote the health, safety and general welfavor of the public.

The sole question presented is the validity of the ordinance. The plaintiff urges that its enforcement will prohibit his doing business in the City of Dayton thereby destroying a valuable property right; that no effort· has been made to regulate this business if the public welfare requires additional legislation; that the real purpose of the ordinance is the protection of resident merchants and that the same is in violation of the Constitution of the United States and of the State of Ohio.

After a careful examination of the record in this case we find that the evidence supports all of the material allegations of the petition. The defendant offered only one witness, a police officer of the City of Dayton who qualified as a traffic expert and he testified that in his opinion the sale of the articles upon and from the streets of Dayton would constitute a traffic hazard and be especially dangerous to children. However, the evidence does not support this conclusion and therefore no weight can be attached to it. ˙ The uncontradicted evidence in the record is that after many years of operation in various cities of Ohio, including the City of Dayton, no person has even been injured while engaged in the purchase of any of plaintiff's products. Even though it should be conceded that the sale of these articles might be a traffic hazard and that others in the same business may not conduct their business with the same degree of care, the proper approach to a solution of the problem would be by regulation of the manner in which the business is conducted and not to destroy a lawful business.

In the enumeration of powers granted to the cities provision is made in the General Code of Ohio for licensing and régulating peddlers and itinerant vendors, in §§3670 and 3672 GC, however, further provides that no municipal corporation may require of the owner of any product of his own raising, or of the manufacture of any article manufactured by him, license to vend or sell in any way, by himself or agent, any such article or product. These enactments clearly recognize peddling as a lawful occupation   If a city cannot even require a license from certain vendors under §3672 GC, and the plaintiff comes under this classification, it should be apparent that it does not

possess the far greater power of completely destroying such a business.

However, it is urged by the defendants that the ordinance is valid by reason of §3634 GC. This section is found in the chapter which enumerates the powers granted to municipal corporations and it is headed "Auctioneering." It provides as follows:

"To regulate auctioneering, to regulate, license or prohibit the sale at auction of goods, wares and merchandise or of live domestic animals at public places within the corporation; and to regulate, license or prohibit the selling of goods, merchandise or medicines on the streets."

This section and §3672 GC are in pari materia and must be construed together giving effect to both sections if possible. In so doing §3634 GC must be construed as being applicable to auctions and other sales made in a somewhat similar manner, to wit, by "street fakirs", "medicine men", etc., who operate from a fixed location in a street, get a crowd to gather around them and then proceed to give a lengthly sales talk on the merits of their product. Both are salesmen, in fact, one selling through competitive bidding and the other fixes his own price on his commodity. Under this interpretation full force and effect can be given to both sections. We therefore hold that §3634 GC does not confer upon the City of Dayton the power to enact the ordinance under consideration. It is well established that a city cannot enact an ordinance which is in conflict with general law. The ordinance is not in harmony with §3672 GC.

A further reason that we consider the ordinance invalid is that it violates the property right of the plaintiff which is constitutionally protected against unwarranted and arbitrary interference by legislative bodies. The plaintiff's right to pursue this occupation is protected by **Article I, Sections 1 and 16 of the Constitution of Ohio,** and by the Fourteenth Amendment to the Federal Constitution.

In Meyer v. Nebraska, 262 U. S. 390, Mr. Justice McReynolds, speaking for the Supreme Court, stated:

"The problem for our determination is whether the statute as construed and applied unreasonably infringers the liberty guaranteed to the plaintiff in error by the Fourteenth Amend-

ment. 'No State shall . . . . deprive any person of life, liberty, or property, without due process of law.'

"While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, engage in any of the common occupations of life, * * * and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. (Citing cases.) The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect. Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts."

In syllabus 6 of Terrace v. Thompson, 263 U. S. 197, it is stated:

"The right to earn a livelihood following the ordinary occupations of life, is protected by the constitution."

See also Yick Wo v. Hopkins, 118 U. S. 356; **Olds v. Klotz, 131 Oh St 447**; and **Cincinnati v. Correll, 141 Oh St 535.**

We do not think that it can be successfully urged that this ordinance comes within the police power granted to municipalities under **Section 3, Article XVIII of the Constitution.** This section provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other regulations, as are not in conflict with general laws."

It will be noted that the constitutional grant of power uses the word "regulations" and not the word "prohibitions". "Regulation" does not by any ordinary or usual definition include "prohibition". On the contrary the grant of power to regulate would seem to negative the power to prohibit.

Under the title "Municipal Corporations", 37 Am. Jur., Section 280, it is stated:

"that express authority to regulative negatives by implication the power to prohibit. The power to regulate implies the existence, and not the destruction, of the thing to be controlled."

The Ohio Supreme Court in **Bronson v. Oberlin, 41 Oh St 476,** held that the grant to a municipality of the power to regulate the sale of intoxicating liquors did not include the power to prohibit such sale.

**Sec. 3632 GC** grants a municipality power:

"* * * to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon. * * * "

Here again the word "regulate" not "prohibit" is used. We recognize that the term "regulation" has been construed to include "prohibition" when the object of the legislative regulation is an inherently evil occupation, trade or business.

In Eighth Avenue Coach Corp. v. City of New York, 236 N. Y. at page 94, it is stated:

"When regulation becomes destruction, it ceases to be regulation."

See also N. J. Good Humor, Inc. v. Board of Commissioners, 11 A. (2) 113.

In DeBerry v. City of LaGrange, 8 S. E. (2d) 146, the Court stated:

"As we have said before, the power to regulate such a business is not the equivalent of the power to destroy."

In State v. Brown, 135 Me. 36, 188 A. 713, the Supreme Court stated at page 715, in dealing with a peddling exclusion ordinance:

"Under a general power to regulate and license a municipality cannot, directly or indirectly, entirely prohibit a useful occupation or privilege."

It is further urged by the appellee that even if **Section 3 of Article XVIII of the Ohio Constitution** should be construed

to include the power to prohibit, the power is subject to the limitation that the exercise of it must be reasonable. This limitation has been stated by the Supreme Court of the State of Ohio in the case of **Froelick v. City of Cleveland, 99 Oh St 376; Olds v. Klotz, 131 Oh St 447;** and **Cincinnati v. Korrell, 141 Oh St 535.**

We are of the opinion from the evidence submitted that the ordinance is unreasonable in that it destroys a lawful business instead of attempting to regulate it. There is no evidence that prohibition as distinguished from regulation is essential to the public welfare. The means adopted are not reasonable and appropriate to the professed end.

In the case Schul, et al. v. King, et al. 70 N. E. (2) 378, the facts are quite similar to the case at bar. Speaking on this subject the Court said:

"We find, even after giving consideration to the presumption of constitutionality which attends legislation, that this ordinance has no real or substantial relation to the safety, health or general welfare of the public. We find that this enactment is completely destructive of the plaintiff's lawful business and is indefensible as a valid exercise of the police power.

The record in this case shows conclusively that the city prior to the adoption of this ordinance, made not the slightest attempt to adopt measures calculated to regulate so as to prevent whatever abuses or objections attended plaintiffs' pursuit of their business. Prohibition of a lawful business is not justified even when all remedies for the prevention of the evil in connection with the business prove defective."

See also Adam v. Tanner, 244 U. S. 590; Frecker v. City of Zanesville, 72 N. E. (2d) 477. The appellant cites the case of **X-Cel Dairy, Inc., v. City of Akron, 16 O. O. 422,** where the court held a similar ordinance to be neither discriminatory nor arbitrary. An examination of this case discloses that no testimony was taken and that the same was submitted upon an agreed statement of facts. These facts are not reported, and it can not be said that they are on all fours with the case at bar. It further appears from this case that the only question considered was whether or not the legislation was unreasonable and discriminatory. It did not consider the same legal propositions supporting the invalidity of the ordinance which

have been presented in this case, and it cannot, therefore, be said to be controlling.

For the foregoing reasons our judgment will be the same as that in the trial court.

HORNBECK and WISEMAN, JJ, concur.