VILLAGE OF WEST JEFFERSON, APPELLANT, *v.* ROBINSON, APPELLEE.

[Cite as Village of West Jefferson v. Robinson, 1 Ohio St. 2d 113.]

114

(No. 38784—Decided March 10, 1965.)

* * *."

*Mr. William S. Culp,* for appellant.
*Messrs. Dunkle & Dunkle, Mr. Peter Dunkle, Jr., Messrs. Martin, Browne, Hull & Harper* and *Mr. Bitner Browne,* for appellee.

TAFT, C. J.  Section 3 of Article XVIII of the Ohio Constitution reads:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The power of any Ohio municipality to enact local police regulations is no longer dependent upon any legislative grant thereof, as it was prior to the adoption in 1912 of the foregoing constitutional provisions.  That power is now derived directly from those constitutional provisions.

The ordinance in question is a local police regulation within the meaning of those words as used in Section 3 of Article XVIII of the Ohio Constitution.

West Jefferson can therefore adopt and enforce such ordinance within West Jefferson unless it is in conflict with general laws or with some provision of the Ohio or federal Constitution.

It is conceded that the ordinance is not in conflict with any provision of the federal Constitution.

Defendant contends and the Court of Appeals held that the ordinance in question is invalid because in conflict with Sections 715.63 and 715.64, Revised Code, which read:

"715.63.  Any municipal corporation may license exhibitors of shows or performances of any kind, hawkers, peddlers, auc-

tioneers of horses and other animals on the highways or public grounds of the municipal corporation, vendors of gunpowder and other explosives, taverns, house of public entertainment, and hucksters in the public streets or markets. The municipal corporation may, in granting such license, charge such fee as is reasonable. No municipal corporation may require of the owner of any product of his own raising, or the manufacturer of any article manufactured by him, a license to vend or sell, by himself or his agent, any such article or product. The legislative authority of such municipal corporation may delegate to the mayor of the municipal corporation the authority to grant, issue, and revoke licenses.

"715.64. Any municipal corporation may license transient dealers, persons who temporarily open stores or places for the sale of goods, wares, or merchandise, and each person who, on the streets or traveling from place to place about such municipal corporation, sells, bargains to sell, or solicits orders for goods, wares, or merchandise by retail. Such license shall be granted as provided by Section 715.63 of the Revised Code.

"This section does not apply to persons selling by sample only, nor to any agricultural articles or products offered or exposed for sale by the producer."

The argument as to conflict between the ordinance and these statutes seems to be twofold, *i. e.*:

1. By granting power to license the activity of defendant which the ordinance prohibits, the statute impliedly expresses an intention to take away any municipal power to prohibit that activity.

2. By the next to the last sentence of Section 715.63 and the last sentence of the first paragraph of Section 715.64 the General Assembly expressed an intention that a municipal corporation should have no power to license, and therefore by necessary implication expressed an intention that a municipal corporation should have no power to prohibit what the ordinance has been held to prohibit the defendant from doing.

Even if the ordinance does conflict with these statutes, the question remains whether these statutes represent the "general laws" specified in Section 3 of Article XVIII.

Thus, in the opinion in *City of Youngstown* v. *Evans* (1929), 121 Ohio St. 342, it is stated:

"Section 3628, General Code [Section 715.67, Revised Code], provides that all municipal corporations shall have general power 'to make the violation of ordinances a misdemeanor, and to provide for the punishment thereof by fine or imprisonment, or both, but such fine shall not exceed five hundred dollars and such imprisonment shall not exceed six months.'

"The ordinances * * * provide penalties in excess of this limitation. If the Code section is effective as a limitation, the ordinances are clearly invalid. * * *

"* * * municipalities derive their authority to enact municipal legislation relating to minor offenses directly from the Constitution, limited only by the proviso that such municipal legislation shall not conflict with general laws. Section 3628 is a general law in the limited sense that it operates uniformly throughout the state. It is not a general law in the sense of prescribing a rule of conduct upon citizens generally. It is a limitation upon lawmaking by municipal legislative bodies. * * *

"The validity and scope of Section 3628 may properly be tested by supposing an extreme case. Let it be supposed that it provided for a complete prohibition upon municipal legislation. Manifestly such a law would not be effective to take away the power conferred upon municipalities by the plain provisions of the Constitution. Or let it be supposed that Section 3628 provided that municipalities should not impose any fine in excess of one dollar for violation of any police or sanitary ordinance and that it prohibited punishment by imprisonment altogether. No one would contend that such an indirect effort would be in any wise different in effect from a plain prohibition. This principle was discussed and decided in *Fremont* v. *Keating*, 96 Ohio St. 468, 470, 118 N. E. 114.

"* * * it was intended to clothe municipalities with power to prescribe rules of conduct in all matters relating to local police, sanitary, and other similar regulations, where no rules had been prescribed by the General Assembly; and, as to the matter where the General Assembly had theretofore or might thereafter prescribe rules, the municipal ordinances and regulations would be effective only so far as consistent with general

law." See, also, *Froelich* v. *City of Cleveland* (1919), 99 Ohio St. 376, 386, 124 N. E. 212. But, cf. *Schneiderman, an Infant,* v. *Sesanstein* (1929), 121 Ohio St. 80, 167 N. E. 158, 64 A. L. R. 981.

Sections 715.63 and 715.64, Revised Code, do not purport to license (cf. *Auxter* v. *City of Toledo* [1962], 173 Ohio St. 444, holding ordinance licensing activity invalid because activity being conducted under license granted pursuant to statute), prohibit, or otherwise regulate any activity. They do not purport to provide for the government of municipalities (see Section 2 of Article XVIII of Ohio Constitution) other than with respect to adoption and enforcement of "local police, sanitary or other similar regulations." See *Leavers* v. *City of Canton* (1964), 1 Ohio St. 2d 33. They purport only to grant legislative power to and to limit legislative power of municipal corporations to adopt and enforce certain police regulations. The words "general laws" as set forth in Section 3 of Article XVIII of the Ohio Constitution mean statutes setting forth police, sanitary or other similar regulations and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations.

Defendant next contends that the ordinance in question conflicts with Sections 1 and 19 of Article I of the Ohio Constitution because it interferes with the enjoyment and use of property and the right to make contracts. In support of this contention, defendant relies on *Great Atlantic & Pacific Tea Co.* v. *Village of Tippecanoe* (1911), 85 Ohio St. 120, 96 N. E. 1092. It is sufficient to distinguish that case to point out that the ordinance there involved was not limited in its application, as the ordinance in the instant case is, to "going in and upon private residence * * * *not having been requested or invited* so to do by the owner or * * * occupant * * *." (Emphasis added.)

The effect of this difference is well demonstrated by the following portion of the quotation from Chafee "Free Speech in the United States" set forth at page 639 in the opinion in *Breard* v. *Alexandria* (1951), 341 U. S. 622, 95 L. Ed. 1233, 71 S. Ct. 920, 35 A. L. R. 2d 335:

"House to house canvassing raises more serious problems.

Of all the methods of spreading unpopular ideas, this seems the least entitled to extensive protection. The possibilities of persuasion are slight compared with the certainties of annoyance. Great as is the value of exposing citizens to novel views, home is one place where a man ought to be able to shut himself up in his own ideas if he desires. There he should be free not only from unreasonable searches and seizures but also from hearing uninvited strangers expounding distasteful doctrines. A doorbell cannot be disregarded like a handbill. It takes several minutes to ascertain the purpose of the propagandist and at least several more to get rid of him. * * * Moreover, hospitable housewives dislike to leave a visitor on a windy doorstep while he explains his errand, yet once he is inside the house robbery or worse may happen. So peddlers of ideas and salesmen of salvation and odd brands seem to call for regulation as much as the regular run of commercial canvassers. * * * Freedom of the home is as important as freedom of speech. I cannot help wondering whether the Justices of the Supreme Court are quite aware of the effect of organized front-door intrusions upon people who are not sheltered from zealots and impostors by a staff of servants or the locked entrance of an apartment house.''

We recognize that there have been a substantial number of decisions in other jurisdictions holding invalid legislation similar to the ordinance involved in the instant case. See cases collected in annotation, 35 A. L. R. 2d 355, 364-366.

On the other hand, there are a number of decisions holding such legislation to be within the police power. See, for example, *Breard* v. *Alexandria, supra* (341 U. S. 642); *Town of Green River* v. *Fuller Brush Co.*, 65 F. 2d 112; and other cases collected in annotation, 35 A. L. R. 2d 355, 364-366.

The reasons advanced in cases sustaining such legislation are more persuasive to us than those advanced in cases holding such legislation invalid.

Police regulations, whether by ordinance or statute, will frequently interfere with the enjoyment and use of property and with the making of contracts. However, this court has consistently held that a police regulation having that effect may be valid unless it clearly appears that such regulation bears no real and substantial relation to the public health, safety, morals

or general welfare of the public or is unreasonable or arbitrary. *Benjamin* v. *City of Columbus* (1957), 167 Ohio St. 103, 146 N. E. 2d 854; *Curtiss* v. *City of Cleveland* (1959), 170 Ohio St. 127, 163 N. E. 2d 682; *Ghaster Properties, Inc.,* v. *Preston, Dir.* (1964), 176 Ohio St. 425, 200 N. E. 2d 328.

In our opinion, the ordinance in question does bear a real and substantial relation to the public safety and general welfare of the public and is neither unreasonable nor arbitrary.

It is further contended that legislation cannot make that a nuisance which is not in fact a nuisance (*In re Thornburg* [1936], 55 Ohio App. 229, 9 N. E. 2d 516) or prohibit a theretofore legitimate occupation by declaring it to be a nuisance (*Frecker* v. *City of Dayton,* 88 Ohio App. 52, 85 N. E. 2d 419 [affirmed for other reasons, 153 Ohio St. 14]). However, this court has only recently held that legislation may provide that a theretofore lawful activity will thereafter be a nuisance; and such legislation may be valid, if it comes within the police power, *i. e.,* if it has a real and substantial relation to the public safety and general welfare of the public and is neither unreasonable nor arbitrary. *Ghaster, Inc.,* v. *Preston, supra* (176 Ohio St. 425). See, also, *Benjamin* v. *City of Columbus, supra* (167 Ohio St. 103).

The Court of Appeals opinion suggests that the power given to municipalities by Section 3 of Article XVIII to adopt and enforce local police regulations does not include the power by such regulations to prohibit. Any such idea should be completely dispelled by our recent decision in *Ghaster Properties, Inc.,* v. *Preston, supra* (176 Ohio St. 425), if it had not already been by paragraph four of the syllabus in *Benjamin* v. *City of Columbus, supra* (167 Ohio St. 103).

For the foregoing reasons, the judgment of the Court of Appeals is reversed and that of the Common Pleas Court is affirmed.

*Judgment reversed.*

Corrigan, Matthias, O'Neill, Herbert, Schneider and Brown, JJ., concur.

Corrigan, J., of the Eighth Appellate District, sitting by designation in the place and stead of Zimmerman, J.