CITY OF CINCINNATI

v.

HAWKINS et al.*

Hamilton County Municipal Court,
Hamilton County, Ohio.

Nos. 93–CRB–16441, 93–CRB–21967, 93–CRB–21972 and 93–CRB–28249.

Decided Dec. 27, 1993.

---

* The subsequent odyssey of these cases is as follows: Defendant Hawkins was found guilty and fined by this court. The court later dismissed the two cases against Norwell and the case against Ryther for failure to prosecute. The prosecution appealed the case dismissed against Ryther and one of the cases dismissed against Norwell, and the court of appeals reversed those dismissals, noting procedural confusion. Upon remand, the prosecution dismissed the case against Ryther because the evidence had been destroyed in the interim. The prosecution refiled the other case against Norwell, who was then acquitted by another judge of this court. The court dismissed the remaining case against Norwell under R.C. 2945.71. No appeal was taken from that decision.

**6**

*Kevin O. Donovan* and *Melanie J. Reising,* Assistant City Prosecutors, for the prosecution.

*Robert Gutzwiller,* for defendant Albert Hawkins.

*Douglas M. Mansfield,* for defendants Linda Norwell and Vann Ryther.

MARK P. PAINTER, Judge.

## I

### Facts and Introduction

This opinion consolidates several cases in which defendants, licensed street peddlers, were charged with "selling or offering for sale tickets to a sporting-type event at greater than face value within twenty feet of a crosswalk" in violation of Cincinnati Municipal Code ("C.M.C.") 839–11(e). This opinion will address in order the following issues: (1) the prosecution's motion for relief from joinder; (2) the effect of defendant Hawkins' no contest plea; (3) whether C.M.C. 839–11(e) defines "tickets" as merchandise; (4) whether it is unconstitutionally vague; and (5) whether it violates the Home Rule Amendment of the Ohio Constitution.

In case No. 93–CRB–16441, defendant Albert Hawkins pled no contest to the charge and now argues that he should be found not guilty because the charges do not constitute a violation of C.M.C. 839–11(e). In case No. 93–CRB–21967, defendant Vann Ryther, and in case Nos. 93–CRB–21972 and 93–CRB–28249, defendant Linda Norwell, were also charged with the same offense. Before trial, defendants Ryther and Norwell filed a motion to dismiss on the following grounds: (1) "Tickets" are not "goods, wares, or merchandise" as that term is used in C.M.C. 839–11(e); (2) C.M.C. 839–11(e) is unconstitutional under Section 3, Article XVIII, Ohio Constitution because it is in conflict with R.C. 715.63 and 715.64; (3) the complaint fails to charge an offense against defendants; and (4) C.M.C. 839–11(e) is unconstitutional and void for vagueness. These grounds were subsequently adopted by defendant Hawkins at a consolidated oral argument. Also, the prosecution has filed a motion to sever the cases.

This court commends counsel for defendants for raising the myriad issues involved here—our profession is honored by counsel who care about legal issues. Seldom do we see real legal advocacy in cases such as this. Just when we are inclined to think otherwise, the tradition and the profession live. Also, counsel for the prosecution have answered defendants' arguments with skillful research and analysis.

## II

### Prosecution's Motion for Relief from Prejudicial Joinder

The court consolidated all cases for briefing and oral argument. The prosecution moved for relief from prejudicial joinder on the theory that defendant Hawkins waived his right to raise constitutional issues by pleading no contest. The prosecution fears that if the court rules in favor of defendant Hawkins, the prosecution will be foreclosed from appealing this court's decision. The prosecution has a point in that this court should not, pursuant to "no contest" plea, find defendant not guilty on the grounds of unconstitutionality of the ordinance involved. Rather, the assertion of unconstitutionality should be made as a motion to dismiss, under Crim.R. 12, as was done by defendants Ryther and Norwell. The prosecution's argument isn't really about prejudicial joinder, but a legal argument that defendant Hawkins should not be able to argue unconstitutionality given the procedural posture of the case. Because of the court's resolution of the various issues in the case, the issue is moot, and the prosecution's motion is overruled.

## III

### No Contest Plea

The next issue is the procedural matter of defendant Hawkins' no contest plea. Defendant Hawkins pled no contest to the charge and then argued that he

8

should be found not guilty because the allegations he was admitting did not constitute a violation of C.M.C. 839–11(e). The prosecution contends that defendant Hawkins' no contest plea is sufficient for a finding of guilty. The prosecution's argument is simply this—"it is unfair to plead no contest and then argue the law." While unusual in this court (not to plead no contest but to argue the law), this procedure is in fact legal.

■ A defendant's no contest plea constitutes a stipulation that a court can make a finding of guilty or not guilty from the prosecution's explanation of the circumstances. R.C. 2937.07. *Cuyahoga Falls v. Bowers* (1984), 9 Ohio St.3d 148, 9 OBR 438, 459 N.E.2d 532, holds that R.C. 2937.07 is not procedural but contains substantive rights and therefore is not superseded by Crim.R. 11. " '[A] defendant has a substantive right to be discharged by a finding of not guilty where the statement of facts reveals a failure to establish all the elements of the offense. If this were not so, assuming the complaint or indictment to be properly worded, the trial court would be bound to ignore a failure of the facts to establish a necessary element of a case and simply make the finding of guilty in a perfunctory fashion. We do not believe that is what the rule intends, and it is difficult for us to conceive a more substantive right than to be found not guilty under proper circumstances.' " *Id.* at 150, 9 OBR at 440, 459 N.E.2d at 535, quoting *Springdale v. Hubbard* (1977), 52 Ohio App.2d 255, 259–260, 6 O.O.3d 257, 259, 369 N.E.2d 808, 812.

■ Furthermore, Crim.R. 11(B) states: "(2) The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." A no contest plea relieves the prosecution of the burden of presenting evidence sufficient to prove the defendant guilty beyond a reasonable doubt. *State v. Stow Veterans Assn.* (1987), 35 Ohio App.3d 45, 519 N.E.2d 660. However, a conviction is improper when statements of factual matter presented to the court in support of the complaint negate the existence of an essential element of the offense charged. *Stow Veterans* and *Bowers, supra.*

Defendant's no contest plea is an admission that defendant was selling tickets at greater than face value within twenty feet of a crosswalk. This admission relieves the prosecution of the burden of proving this allegation beyond a reasonable doubt. Nonetheless, defendant Hawkins should be found not guilty, then, if selling tickets at greater than face value within twenty feet of a crosswalk does not constitute a violation of C.M.C. 839–11(e).

IV

"Tickets" as "Merchandise"

Defendants first argue that they have not violated C.M.C. 839–11(e) because "tickets" do not fall within the definition of "merchandise." The interpretation of a statute "starts and ends with the words chosen by the legislature, but is not limited to the words alone, because the context of the enactment must be considered. The process of interpretation requires (1) a decision about the purpose to be attributed to the statute and (2) a decision about the meaning of the legislature's words that will carry out that purpose. The words have a double function: they serve as guides to discovery of the purpose and they serve as limitations on the extent of the statute's applications. The words must be taken in their usual, normal, customary meaning." *State v. Cravens* (1988), 42 Ohio App.3d 69, 72, 536 N.E.2d 686, 689. In other words, courts should construe words to mean what they normally mean.

C.M.C. Chapter 839 addresses the activities of peddlers and itinerant vendors. The chapter was drafted, in general, in response to concerns about inconvenience or hazards to passersby from the activities of peddlers or vendors engaging in outdoor sales on city property, sidewalks, and streets. Judging by the zealousness with which the city of Cincinnati enforces these provisions, the danger must be extreme indeed. The ancient and honorable trade of peddler is unloved in Cincinnati.

Unfortunately and unquestionably C.M.C. Chapter 839 stands out as an example of poor statutory drafting. See *Cincinnati v. Champion* (Oct. 5, 1988), Hamilton App. Nos. C–870590 through 870592, unreported, 1988 WL 76421, which gives several examples. C.M.C. Chapter 839 is set out in a footnote, if for no other reason than to furnish legal drafting classes with a "before" exercise. It has, in fact, been so used.[1] The civil servants who drafted this section were

---

1. By the author of this opinion. The text of section 11 is as follows:

"Section 839–11 Street Sales—General. No person licensed as a peddler shall demonstrate, sell, or offer for sale or barter any goods, wares, merchandise, food, confection or drink upon any highway or sidewalk or any other city-owned property within the city of Cincinnati except in accordance with all of the following provisions:

"(a) No merchandise shall be displayed or sold on Fountain Square, on the overhead walkway system, on Riverfront Stadium or Riverfront Coliseum plaza level, on the pedestrian bridges leading to the Riverfront Stadium plaza or the Riverfront Coliseum plaza, or in any parking lots or garages owned or operated by the city of Cincinnati.

"(b) No merchandise shall be displayed or sold to the occupants of vehicles stopped in traffic.

"(c) Each peddler selling from a motor or animal-drawn vehicle must comply with all traffic regulations at the location the vehicle is parked or standing.

"(d) No merchandise shall be displayed or sold at any location where the sidewalk is less than 12 feet in width from the private property line to the curbline.

**10**

probably not paid by the word, or by the pound. The court is thus unable to discover any mitigation of their offense.

Consistent with its poor drafting, C.M.C. Chapter 839 does not define the terms "tickets" or "merchandise." However, the opening paragraph of C.M.C. 839–11 uses all-encompassing language to describe what peddlers are prohibited from displaying or selling. C.M.C. 839–11 states that no person licensed as peddler shall sell or offer for sale "goods, wares, merchandise, food, confection or

"(e) No merchandise shall be displayed or sold within 20 feet from the point of intersection of the curblines (except alleys), crosswalk, bus stop, escalator or stairway leading to or from the overhead walkway system.

"(f) No merchandise shall be displayed or sold within 10 feet of a fire hydrant, a standpipe, a sprinkler intake, a doorway or other access point to abutting property, a store window or a sidewalk elevator.

"(g) No merchandise shall be displayed, or sold at a location which hinders or restricts access to a telephone booth, mailbox, parking meter, fire alarm call box or traffic-control box.

"(h) No merchandise shall be displayed or sold within 40 feet of the location at which another peddler is already displaying or selling merchandise except on Sunday and legal holidays. On Sundays and legal holidays, the distance between peddlers shall be no less than 20 feet. In the case of a dispute between peddlers, the peddler who arrived first on the day involved shall be deemed to have the privilege of operating at that location on that day. One peddler must continue to be there in person with wares to claim such privilege. Such distances shall be measured from the end of one display stand, table, cart containers or other appurtenance to the beginning of the next.

"(i) No merchandise shall be displayed or sold in a manner that blocks, obstructs or restricts the free passage of pedestrians or vehicles in the lawful use of the sidewalk or highways or ingress or egress to the abutting property.

"(j) All merchandise shall be displayed or sold from the portable stands or containers. Each peddler shall remove all merchandise, packaging, paper, containers, display stands or tables, or other materials brought to the location at the termination of sales each day. No permanent stands or displays will be permitted.

"(k) No peddler's display stand, cart, container or other appurtenances, paraphernalia, merchandise, supplies or signage shall occupy more than 42 inches of lateral sidewalk width, nor more than 72 inches of longitudinal sidewalk area.

"(l) Each peddler during the period of selling shall keep the area within 10 feet of the location where the peddler sells or displays merchandise free from all litter and debris arising from the operations, including the litter which arises from actions of customers in disposing of wrapping or packaging materials on merchandise sold by the peddler.

"(m) No peddler's display stand, cart, container or other appurtenance or paraphernalia shall be set up along street plantings or street furniture.

"(n) Peddlers shall at all times exercise reasonable care that their merchandise, packaging material, display equipment and other paraphernalia shall not create a safety or health hazard to customers or other persons using the public highways or sidewalks or to persons on or in abutting property.

"(o) No food, confection or drink except prepackaged and/or containerized products shall be displayed or sold from any unimproved public property, including unimproved sidewalks or pedestrian walkways.

"(p) No street sales shall be conducted nor shall any display stand, cart, container, or other appurtenances be permitted on any public property between the hours of midnight and 6:00 a.m. daily.

"Nothing herein shall be construed to prohibit the distribution of noncommercial handbills, cards, leaflets, other literature or the sale of newspapers and magazines on the sidewalks."

drink * * *." Defendants argue that "goods, wares, and merchandise" are general, tangible items that are manufactured (as opposed to grown, harvested, or mined).

Over the years, the phrase "goods, wares, and merchandise" has evolved into a term of art (another example of lawyers' tendency to use three words when one will do). Black's Law Dictionary defines "goods, wares, and merchandise" as "[a] general and comprehensive designation of such chattels and goods as are ordinarily the subject of traffic and sale." Black's Law Dictionary (6 Ed.1990) 694. However, the subsections of 839–11 do not use the term of art "goods, wares, and merchandise" but simply use the term "merchandise."

The Oxford English Dictionary defines "merchandise" as "(2) the commodities of commerce * * * (c) * * * a saleable commodity, and article of commerce." This definition of "merchandise" is not limited to tangible physical goods. It defines the term broadly to include the buying and selling of anything than can be bought or sold. Even Black's Law Dictionary defines "goods, wares, and merchandise" more broadly than do defendants by including those items that "are ordinarily the subject of traffic and sale."

Defendants contend "tickets" are defined by case law as either a revocable license to attend a function or an entertainment event, or evidence that a fee or fare has been paid. E.g. *Marrone v. Washington Jockey Club* (1913), 227 U.S. 633, 637, 33 S.Ct. 401, 402, 57 L.Ed. 679, 681; *Bickett v. Buffalo Bills, Inc.* (1983), 122 Misc.2d 880, 472 N.Y.S.2d 245; *Kennedy Theater Ticket Serv. v. Ticketron, Inc.* (E.D.Penn.1972), 342 F.Supp. 922.

This court must look at the distinction between merchandise and license to determine whether "tickets" comes within the definition "merchandise" as it is used in C.M.C. 839–11(e). In those cases holding that "tickets" are merely licenses to attend an event, the parties involved were the proprietors of the event and the ticket-holders who were attending the events. The key to the analysis, then, is the relationship between the ticket-holder and the proprietor. While contractual duties arise out of the relationship between the proprietor and the ticket-holder in that the proprietor must perform or respond in damages for breach of his contract, the proprietor is not liable in action for trespass or tort because the license is revocable at the will of the proprietor. A ticket, in that instance, is a memorandum of the agreement between the proprietor and the ticket-holder.

However, it is commonplace in this country that certain people buy "tickets" to an entertainment or sporting event with no intention of ever attending the event. These people do not use tickets as licenses to attend these events, but merely act as middlemen in a secondary market. They act as a clearinghouse and set the going market rate for the price of the tickets. Their function is to facilitate the

transfer of "tickets" from promotors of the event to those individuals interested in attending the event. Their profit is the difference between the price a vendor sets for the tickets and the amount an individual is willing to pay to attend the sporting or entertainment event.

■ Here, defendants are acting as middlemen in this secondary market. They never intended to use the "tickets" as a license to attend a sporting event. To them, "tickets" are simply saleable commodities to be traded for profit, *i.e.*, "merchandise" as that term is defined in Black's Law Dictionary and The Oxford English Dictionary. Therefore, "tickets" comes within the scope of "merchandise" as that term is used in C.M.C. 839–11.

## V

### Home Rule Amendment to the Ohio Constitution

Defendants also argue that C.M.C. 839–11 is unconstitutional under Section 3, Article XVIII of the Ohio Constitution, because it is in conflict with R.C. 715.63 and 715.64, the Ohio Peddler Statute, since it fails to include the exception contained in the Ohio Peddler Statute.

Section 3, Article XVIII of the Ohio Constitution is otherwise known as the Home Rule Amendment. It can be said that this amendment is as poorly drafted as C.M.C. Chapter 839. It has, over the years, caused much confusion and given many courts great difficulty in interpreting and applying it. The Home Rule Amendment states: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The Ohio Peddler Statute provides pertinent part: "Any municipal corporation may license * * * hawkers, peddlers * * * and hucksters in the public streets or markets. The municipal corporation may, in granting such license, charge such fee as is reasonable. No municipal corporation may require the owner of any product of his own raising, or the manufacturer of any article manufactured by him, a license to vend or sell, by himself or his agent, any such article or product * * *." R.C. 715.63. "Any municipal corporation may license transient dealers, persons who temporarily open stores or places for the sale of goods wares, or merchandise, and each person who, on the streets or traveling from place to place about such municipal corporation, sells, bargains to sell, or solicits orders for goods wares, or merchandise by retail. Such license shall be granted as provided by section 715.63 of the Revised Code." R.C. 715.64.

C.M.C. Chapter 839 does not contain the exception for the "owner" sales as set forth in R.C. 715.63 and by reference in R.C. 715.64. It might seem, then, that

C.M.C. Chapter 839 is in conflict with R.C. 715.63 and therefore violates the Home Rule Amendment to the Ohio Constitution. An appellate court in *Wooster v. Gentile* (1962), 116 Ohio App. 386, 22 O.O.2d 211, 188 N.E.2d 172, agreed, holding that a Wooster municipal ordinance licensing peddlers and solicitors, which did not contain the exception set forth in the Ohio Peddler Statute, violated the Home Rule Amendment to the Ohio Constitution. However, *Wooster* appears to be overruled by implication, as this same issue was squarely addressed by the Ohio Supreme Court in *W. Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382. In *Robinson,* a municipal ordinance licensing peddlers and vendors was attacked as violating the Ohio Constitution because it did not contain the exception set forth in R.C. 715.63.

The principal case in analyzing the application of the Home Rule Amendment is *Auxter v. Toledo* (1962), 173 Ohio St. 444, 20 O.O.2d 71, 183 N.E.2d 920. The *Auxter* court outlined a three-pronged analysis to determine whether a municipal ordinance must yield to the provisions of a state statute. First, it must be ascertained whether the local ordinance seeks to exercise a power of local self-government or constitutes a police regulation. *Auxter* at 446, 20 O.O.2d at 72, 183 N.E.2d at 922. Second, it must be determined whether the state legislation is a general or special provision. *Id.* at 448, 20 O.O.2d at 73, 183 N.E.2d at 923. Finally, it must be ascertained whether a conflict exists between the state and local provisions. *Id.* at 448, 20 O.O.2d at 73, 183 N.E.2d at 923.

Applying this three-pronged analysis, the *Robinson* court upheld the municipal ordinance. The basis for the court's reasoning was that the Ohio Peddler Statute was not "general laws" within the meaning of Section 3, Article XVIII of the Ohio Constitution and therefore did not violate the second prong of the framework laid out in *Auxter, supra.* The court stated the Ohio Peddler Statute does "not purport to license * * *, prohibit, or otherwise regulate any activity. * * * They purport only to grant legislative power to and to limit legislative power of municipal corporations to adopt and enforce certain police regulations. The words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution mean statutes setting forth police, sanitary or other similar regula-tions and not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations." *Robinson,* 1 Ohio St.2d at 118, 30 O.O.2d at 476–477, 205 N.E.2d at 386.

Thus, in *Robinson,* the Ohio Supreme Court has specifically decided this issue. However, defendants contend that *Robinson* is impliedly overruled and the *Wooster* holding revived by the holding of *Ohio Assn. of Private Detectives v. N. Olmsted* (1992), 65 Ohio St.3d 242, 602 N.E.2d 1147. Defendants' reliance is misplaced. *North Olmsted* used the same three-pronged analysis set forth in

*Auxter, supra,* and used by *Robinson, supra.* Furthermore, at issue in *North Olmsted* was statewide *regulation* of private security personnel. In *North Olmsted* the court held that the pertinent provisions of the Revised Code were "general laws" within the context of the Home Rule Amendment. Our case involves permissive state legislation specifically allowing local regulation. *North Olmsted* is thus easily distinguishable and, pursuant to *Robinson,* C.M.C. Chapter 839 does not violate the Ohio Constitution for being in conflict with the Ohio Peddler Statute.

## VI

### Constitutional Vagueness Doctrine

Defendants also claim that C.M.C. 839–11(e) violates the United States Constitution. Generally, courts will not consider constitutional questions until the necessity for such a decision arises, and if a case can be decided on another basis, issues of constitutionality will not be addressed. *State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 598 N.E.2d 1149. However, because "tickets" fall within the definition of "merchandise," and C.M.C. Chapter 839 does not violate the Ohio Home Rule Amendment, it is appropriate to consider the constitutional arguments raised by defendants.

Defendants argue that C.M.C. 839–11(e) is unconstitutionally vague and should therefore be void for violating the Fourteenth Amendment to the United States Constitution. Interwoven with the defendants' vagueness argument is the claim that the complaint fails to charge an offense against the defendants. These two issues will be addressed together.

 It is well settled that all legislative enactments enjoy a presumption of constitutionality.[2] *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450, citing *Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 377, 15 O.O.3d 450, 451, 402 N.E.2d 519, 521; *State ex rel. Taft v. Campanella* (1977), 50 Ohio St.2d 242, 246, 4 O.O.3d 423, 425, 364 N.E.2d 21, 24; *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59. Courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional. *Id.,* citing *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 56, 330 N.E.2d 896, 898; *Wilson v. Kennedy* (1949), 151 Ohio St. 485, 492, 39 O.O. 301, 304, 86 N.E.2d 722, 725; *Eastman v. State* (1936), 131 Ohio St. 1, 5 O.O. 248, 1 N.E.2d 140.

---

**2.** The Cincinnati Municipal Code must regularly rely on this presumption.

When an ordinance is challenged for violating the Constitution on vagueness grounds, as it is here, the United States Supreme Court has stated: " 'If this general class of offenses [to which the statute applies] can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction.' " *Id.*, quoting *United States v. Harriss* (1954), 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989, 993. The *Harriss* court also articulated the standard to be followed in determining whether a statute is impermissibly vague or indefinite. "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Harriss* at 617, 74 S.Ct. at 812, 98 L.Ed. at 992. This standard was also adopted by the Ohio Supreme Court in *State v. Dorso, supra.* Finally, "a statute or ordinance is not necessarily void for vagueness merely because it could have been more precisely worded." *Dorso*, 4 Ohio St.3d at 61, 4 OBR at 151, 446 N.E.2d at 451, citing *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1510–1511; *United States v. Petrillo* (1947), 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1541–1542, 91 L.Ed. 1877, 1882–1884. If being imprecisely worded were fatal, the entire Cincinnati Municipal Code and large parts of the Ohio Revised Code would be unenforceable.

Section 839–11(e) states: "No merchandise shall be displayed or sold within 20 feet from the point of intersection of the curblines (except alleys), crosswalk, bus stop, escalator or stairway leading to or from the overhead walkway system." Defendants were charged with "selling or offering for sale tickets to a sporting-type event at greater than face value within twenty feet of crosswalk." However, defendants interpret C.M.C. 893–11(e) as prohibiting the displaying or selling of merchandise within twenty feet of the intersection of curblines *with a* crosswalk. Defendants argue that C.M.C. 839–11(e) is vague because a person or ordinary intelligence cannot possibly discern what constitutes the intersection of curblines *with a* crosswalk.

■ Defendants have wholly misconstrued the clear import of C.M.C. 839–11(e). C.M.C. 839–11(e) prohibits the displaying or selling of merchandise within twenty feet of various locations in an urban area. These include a crosswalk, a bus stop, an escalator or stairway, and a "corner." Unfortunately, instead of just using the *word* "corner," C.M.C. 839–11(e) uses the *definition* of "corner," which is phrased as "the point of intersection of curblines." A "corner" is defined as "the point at which two lines meet." American Heritage Dictionary (1981) 297. Given that the purpose of C.M.C. Chapter 839 is to alleviate congestion to pedestrian traffic, it is obvious that the drafters of C.M.C. 839–11(e) were prohibiting sales within twenty feet of a "corner." The word "corner" should have been placed in C.M.C. 839–11(e) and then defined in the definitions section.

This court has already pointed to the many drafting errors present in C.M.C. 839–11(e)—this is yet another example. However, this inappropriate drafting does not make the ordinance void for vagueness. See *Dorso, supra.* Persons of ordinary intelligence, as opposed to the drafters of this ordinance, can comprehend that C.M.C. 839–11(e) prohibits them from selling or displaying merchandise within twenty feet of a crosswalk, or "corner," or bus stop, or escalator or stairway leading to or from the overhead walkway system. Therefore, C.M.C. 839–11(e) is not so vague as to be unconstitutional.

Defendants also argue that since the complaint makes no reference to the intersection of curblines *with a* crosswalk, the defendants, as charged, have not violated C.M.C. 839–11(e). In order to reach defendants' construction, one must insert the words "with a," which do not exist in C.M.C. 839–11(e), after the comma. This court is not aware of any rule of statutory construction, nor do the defendants cite any, which would require prepositional phrases to be inserted after commas. Under traditional rules of interpretation, a comma indicates an "and" or "or," depending upon the context in which the comma is used. The phrase in question reads "from the point of intersection of the curblines (except alleys), crosswalk, bus stop, escalator or stairway leading to or from the overhead walkway system." Given the context of C.M.C. 839–11(e), "or" should be read in after the commas. To do otherwise would render the phrase senseless. Therefore, upon a plain reading of C.M.C. 839–11(e), displaying and selling merchandise is prohibited within twenty feet of a corner, or a crosswalk, or a bus stop, or an escalator or stairway leading to or from the overhead walkway system. One is not permitted to sell within twenty feet of a crosswalk—that is clear—perhaps one of the few things that *is* clear in the entire chapter.

The complaint, then, does charge an offense against the defendants. The complaint charges that defendants did sell or offer to sell tickets, for more than face value, to a sporting-type event within twenty feet of a crosswalk.

Finally, defendants argue that the complaint's language "sell and/or offer for sale" alleges two alternative events, only one of which is a violation of C.M.C. 839–11(e). The attempt to distinguish "sell" from "offer to sell" is without merit. If defendants are in doubt as to the exact conduct charged, a motion for bill of particulars would be in order. See *State v. Neiheisel* (1986), 29 Ohio Misc.2d 1, 29 OBR 55, 502 N.E.2d 711.

## VII

### Conclusion

Defendants have found themselves charged with violating a section of C.M.C. 839–11 that is not unconstitutionally vague and does not violate the United States

Constitution. Also C.M.C. 839–11(e) is not in conflict with R.C. 715.63 and 715.64 and does not violate the Ohio Constitution's Home Rule Amendment. Furthermore, "tickets" are "merchandise" as the word is used in C.M.C. 839–11. Finally, the complaints do charge an offense against defendants. Therefore, in case No. 93–CRB–16441, defendant Albert Hawkins, who pled no contest, is found guilty of violating of C.M.C. 839–11(e). In case Nos. 93–CRB–21967, 93–CRB–21972, and 93–CRB–28249, defendants Vann Ryther and Linda Norwell's motion to dismiss is denied.[3]

*Judgment accordingly.*

---

**3.** Defendant Albert Hawkins was found guilty and fined by this court. The charge against defendant Vann Ryther was dismissed by the prosecution. Defendant Linda Norwell was subsequently acquitted by another judge of the Hamilton County Municipal Court.