THE STATE, EX REL. CORRIGAN, PROS. ATTY., APPELLEE, *v.*
COURT OF COMMON PLEAS; YOUNG, JUDGE, APPELLANT.

[Cite as State, ex rel. Corrigan, v. Court of Common Pleas
(1976), 45 Ohio St. 2d 187.]

(No. 75-553—Decided February 25, 1976.)

188

Mr. *John T. Corrigan*, prosecuting attorney, and *Mr. James J. Sweeney*, for appellee.

*Messrs. Gold, Rotatori, Messerman & Hanna* and *Mr. Gerald A. Messerman*, for appellant.

STERN, J. The question presented is whether the proscriptions against probation within R. C. 2951.02(F) extend to the granting of "shock" or "delayed" probation pursuant to R. C. 2947.061.[1]

R. C. 2951.02, which sets forth the present criteria and conditions for probation, states in subsection (F) that "[a]n offender shall not be placed on probation when any of the following applies:

"(1) The offense involved is aggravated murder or murder.

"(2) The offender is a repeat or dangerous offender as defined in Section 2929.01 of the Revised Code.

"(3) The offense was committed while the offender was armed with a firearm or dangerous ordnance as defined in Section 2923.11 of the Revised Code."

---

[1] R. C. 2947.061 provides, in part:

"Subject to Sections 2951.03 to 2951.09, inclusive, of the Revised Code, the trial court may, upon motion of the defendant made not earlier than thirty days nor later than sixty days after the defendant, having been sentenced, is delivered into the custody of the keeper of the institution in which he is to begin serving his sentence, or upon the court's own motion during the same thirty-day period, suspend the further execution of the sentence and place the defendant on probation upon such terms as the court determines, notwithstanding the expiration of the term of court during which such defendant was sentenced."

In the case at bar, the offender committed an offense while armed with a firearm and, by virtue of R. C. 2951.02 (F)(3), clearly was not eligible for probation at the time of his initial sentencing. However, appellant urges that, by virtue of R. C. 2947.061, he became so eligible, for a limited period, 30 days after his delivery to the custody of a penal institution.

In support of that position, appellant emphasizes that the initial language of R. C. 2947.061, "[s]ubject to Sections 2951.03 to 2951.09, inclusive * * *," does not include R. C. 2951.02. He contends that such exclusion renders the prohibitions against probation within R. C. 2951.02(F) inapplicable to the granting of shock probation.

Prior to adoption of the new Ohio Criminal Code, R. C. 2951.04 specified which offenses were nonprobationary by stating:

"No person convicted of murder, arson, burglary of an inhabited dwelling house, incest, sodomy, rape without consent, assault with intent to rape, or administering poison shall be placed on probation."

The "shock probation" statute, R. C. 2947.061, was first enacted in 1965 (131 Ohio Laws 684), and then amended in 1969 (133 Ohio Laws 2493); it was not amended or modified by the adoption of the new Ohio Criminal Code (H. B. 511, effective January 1, 1974). R. C. 2947.061 has always provided that the authority of the trial court to grant shock probation be "subject to Sections 2951.03 to 2951.09, inclusive, of the Revised Code." This language plainly made shock probation subject to R. C. 2951.04, and therefore shock probation could not be granted for the offenses listed therein.

R. C. 2951.04 was repealed by H. B. 511, and, at the same time, was replaced by the enactment of subsection (F) to R. C. 2951.02, which prohibits the granting of probation to certain types of offenders.[2]

---

[2]H. B. 511 also enacted R. C. 2929.51(B), which permits the granting of shock probation "when an indefinite term of imprisonment for felony is imposed."

The only apparent legislative purpose served by renumbering R. C. 2951.04 is that the limitations upon the granting of probation are no longer to extend to shock probation. The renumbering plainly places the provisions of R. C. 2951.02 outside the range of those statutes subject to which shock probation may be granted. The logical conclusion is that the General Assembly did intend, by replacing R. C. 2951.04 and leaving unchanged R. C. 2947.061, to permit the sentencing court to grant shock probation after actual incarceration of 30 days, even in cases of crimes statutorily designated as nonprobational at the time of sentencing. See Thomas R. Swisher, Report of the Ohio State Bar Foundation, Problems in the Criminal Code I, 47 Ohio Bar 425, 431 (April 15, 1974).

The Court of Appeals granted the writ of prohibition on the grounds that to adopt the position urged by appellant "would produce unreasonable and unintended results." The court noted that certain offenders would be ineligible for probation at the time of sentencing pursuant to R. C. 2951.02(F) and also ineligible for "shock parole" pursuant to R. C. 2967.31 after serving six months of their sentence,[3] but would nonetheless be eligible for shock proba-

---

[3] R. C. 2967.31 provides:

"Notwithstanding any other provision for determining parole eligibility, a prisoner confined in a state penal or reformatory institution may be released on parole at any time after serving six months in the custody of the Department of Mental Hygiene and Correction, when all of the following apply:

"(A) The offense for which the prisoner was sentenced was an offense other than aggravated murder or murder.

"(B) The prisoner has not previously been convicted of any felony for which, pursuant to sentence, he was confined for thirty days or more in a penal or reformatory institution in this state or in a similar institution in any other state or the United States.

"(C) The prisoner is not a dangerous offender as defined in Section 2929.01 of the Revised Code.

"(D) The prisoner does not need further confinement in a penal or reformatory institution for his correction or rehabilitation.

"(E) The history, character, condition, and attitudes of the prisoner indicate that he is likely to respond affirmatively to early release on parole, and is unlikely to commit another offense."

tion after serving thirty days of their sentences.

Certainly, this system of sentence modification appears, to a degree, inconsistent. But we do not find it to be contradictory or absurd, nor that it defeats the statutory purpose. Probation generally relates to an action taken before an individual enters a penal institution under sentence; parole relates to an action taken by a legal authority after the individual is incarcerated. The shock probation statute (R. C. 2947.061) is in effect a hybrid of both probation and parole. It is not unreasonable for different standards to be applied to it. Shock probation gives discretion to the sentencing judge, who is personally acquainted with the nature and circumstances of the crime and the character and background of the defendant, to determine in his judgment whether a relatively brief experience of prison life may be sufficient as punishment and as deterrence. The granting of this authority to a trial judge and the granting of a similar but lesser authority to the parole authority is not contradictory, nor are those authorities in any way incompatible. They are wholly independent. Nor is it unreasonable for the General Assembly to provide that for certain offenses the trial judge may not consider the granting of probation until after the offender has experienced prison life. There is a lack of symmetry in these otherwise comparable legislative grants of authority to modify sentences, but not an incompatibility, and that lack of symmetry alone is not sufficient to alter the language of R. C. 2947.061.

The legislative intent might have been more clearly shown by other language, such as that in recently enacted R. C. 2925.01(D), specifically excluding shock probation for certain drug abuse offenses, or that in R. C. 2967.31 with regard to shock parole. But it is a familiar principle that the statutes of criminal law are to be construed strictly in favor of the accused, and it is clear that the letter of the law permits this prisoner to receive the benefit of shock probation. When the General Assembly wrote that shock probation was to be "subject to Sections 2951.03 to

2951.09," and retained that language while changing the included statutes, we must presume that it intended just that, and did not intend that it also be subject to R. C. 2951.02, as the Court of Appeals held.

Because we find that the trial court did have jurisdiction to consider the granting of shock probation to the appellant, the judgment of the Court of Appeals granting a writ of prohibition must be reversed.

*Judgment reversed.*

O'Neill, C. J., Corrigan, Celebrezze and W. Brown, JJ., concur.

Herbert and P. Brown, JJ., dissent.

William B. Brown, J., concurring. I join with the majority opinion because I do not believe that the General Assembly overlooked the possible inclusion of R. C. 2951.02 within R. C. 2947.061. There are perhaps many arguments for so including it, and the dissenting opinion has noted several. However, those are *legislative considerations*. Contrary considerations may have convinced the General Assembly to strike a balance to avoid possibly harsh or absurd results.

The position urged by the dissenting opinion makes *any* offender of *any* criminal law ineligible for shock probation, not only if the offender *used* a weapon to perpetrate the offense, but also if he "was *armed with* a firearm *or* dangerous ordnance as defined in Section 2923.11 of the Revised Code." R. C. 2951.02(F)(3). (Emphasis added.)

The incredibly broad definitions of "firearm" and "dangerous ordnance," set forth in R. C. 2923.11, give to those terms a legal significance which far exceeds their commonly recognized meanings.

In addition, the phrase "armed with" cannot be readily or universally defined, and this court has not done so. For years it was included in the "armed robbery" statute, R. C. 2901.13, which read: "No person, while *armed with* a pistol,

knife, or other dangerous weapon * * *.'' (Emphasis added.) The present ''armed robbery'' statute, R. C. 2911.01, reads: ''No person * * * shall * * * have a deadly weapon * * * *on or about his person or under his control* * * *.'' (Emphasis added.) If the use of new language in the armed robbery statute is merely a legislative clarification, *i. e.,* if the two emphasized phrases are two ways of saying the same thing, then the course charted by the dissenters would have far-ranging and, in my view, never-intended effects.

HERBERT, J., dissenting. Prior to adoption of the new Ohio Criminal Code, R. C. 2951.04 referred to nonprobationary offenses by stating:

''No person convicted of murder, arson, burglary of an inhabited dwelling house, incest, sodomy, rape without consent, assault with intent to rape, or administering poison shall be placed on probation.''

At that time, as now, shock probation pursuant to R. C. 2947.061 was ''[s]ubject to Sections 2951.03 to 2951.09, inclusive, of the Revised Code * * *'' and, thus, there was no doubt that such probation was subject to the limitations within R. C. 2951.04.

On January 1, 1974, the new Criminal Code became effective, including the present R. C. 2951.02, which, unlike its predecessor,[4] sets forth detailed criteria that a court shall consider in determining whether an offender should receive probation. Under this newly created section, with one exception, the emphasis shifted from nonprobational

---

[4]Former R. C. 2951.02 provided:

''Where the defendant has pleaded guilty, or has been found guilty and it appears to the satisfaction of the judge or magistrate that the character of the defendant and the circumstances of the case are such that he is not likely again to engage in an offensive course of conduct, and the public good does not demand or require that he be immediately sentenced, such judge or magistrate may suspend the imposition of the sentence and place the defendant on probation upon such terms as such judge or magistrate determines. This section does not apply to juvenile delinquents.''

offenses to nonprobationary offenders.[5] The repeal of R. C. 2951.04 and the concurrent enactment of R. C. 2951.02(F) was consistent with this change in philosophy as to eligibility for probation. Therefore, it is reasonable to conclude that the insertion of the proscriptions against probation into R. C. 2951.02 reflects a legislative decision resulting from a changed emphasis in probation, and not a deliberate determination to, in effect, render every offender probationary, irrespective of the nature of his crime.[6] Such a complete and significant change in longstanding public policy, *i. e.*, declaring every violent offense committed against persons to be probationable, must appear directly and unmistakably from a legislative enactment, and will not ordinarily spring from debatable legislative behavior, the import of which must be ascertained by judicial interpretation. See *Buckman* v. *State, ex rel. Bd. of Edn.* (1909), 81 Ohio St. 171, 177, 90 N. E. 158; *State, ex rel. Enos,* v. *Stone* (1915), 92 Ohio St. 63, 110 N. E. 627.

Additionally, to allow shock probation without limitation would mean that one who commits murder, rape, feloni-

---

[5]This becomes evident when it is noted that under R. C. 2951.02(F), one who is a repeat or dangerous offender, or who commits an offense while armed with a firearm, is denied probation. Under R. C. 2951.04, violation of a specified offense was the determining factor.

The concurring opinion appears to bewail the thought that those who commit crimes while armed with a firearm or dangerous ordnance might not be eligible for probation. I do not believe the General Assembly shares that solicitous attitude toward such persons.

It is well known that the federal and state legislative trend today is to increase the punishment for any crime perpetrated by one armed with a firearm. Therefore, it is consummate logic that the Ohio General Assembly meant what it said when it specifically precluded probation for those who commit crimes while armed with instrumentalities which can maim or kill innocent people.

[6]Effective August 27, 1975, subsection (F)(4) was added to R. C. 2951.02, prohibiting the granting of probation to one who commits rape or felonious sexual penetration. Under the majority's construction of the enactments concerned herein, perpetrators of these particularly vicious crimes, along with murderers and repeat or dangerous offenders, would be subject to probation after serving only 30 days in a penal institution.

ous sexual penetration, or is a dangerous offender (including some repeat offenders), would be eligible for shock probation after serving only 30 days of a sentence, yet would be ineligible for shock parole after serving six months. R. C. 2967.31. It is not plausible that the General Assembly desired such unreasonable and inconsistent results, particularly in view of the fact that the shock parole procedures are to "complement" the shock probation statute. (See the committee comments to R. C. 2967.31.)

In enacting R. C. 2951.02(F), the General Assembly set forth specific conditions under which *"an offender shall not be placed on probation."* (Emphasis added.) To allow shock probation under those same circumstances would not only frustrate that scheme, but would yield the above unreasonable and inconsistent results. As this court has often stated, "the General Assembly will not be presumed to have intended to enact a law producing unreasonable or absurd consequences. It is the duty of the courts, if the language of a statute fairly permits or unless restrained by the clear language thereof, so to construe the statute as to avoid such a result." *Canton* v. *Imperial Bowling Lanes* (1968), 16 Ohio St. 2d 47, 242 N. E. 2d 566; *State, ex rel. Cooper,* v. *Savord* (1950), 153 Ohio St. 367, 92 N. E. 2d 390. See, also, R. C. 1.47(C).

It is my conclusion that an offender who is ineligible for probation under R. C. 2951.02(F), is also ineligible for shock probation under R. C. 2947.061.

The judgment of the Court of Appeals prohibiting appellant from granting shock probation should be affirmed.

P. Brown, J., concurs in the foregoing dissenting opinion.