City of Springdale, Appellee, *v.* Hubbard, Appellant.

(No. C-76307—Decided June 29, 1977.)

*Mr. Robert P. Malloy,* for appellee.
*Messrs. Holbrock, Jonson, Bressler & Houser* and *Mr. Timothy R. Evans,* for appellant.

Castle, J.  The defendant-appellant was arrested and charged with a violation of Section 648.04(a) of the Springdale Codified Ordinances. This ordinance is identical to R. C. 2917.11(A) and both provide as follows:

"No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following:

"(1) Engaging in fighting and threatening harm to persons or property or in violent or turbulent behavior;

"(2) Making unreasonable noise or offensively coarse utterance, gesture or display or communicating unwarranted and grossly abusive language to any person;

"(3) Insulting, taunting or challenging another under circumstances in which such conduct is likely to provoke a violent response;

"(4) Hindering or preventing the movement of persons on a public street, road, highway or right-of-way to, from, within or upon public or private property so as to interfere with the right of others and by any act which serves no lawful and reasonable purpose of the offender;

"(5) Creating a condition which is physically offensive to persons or which presents a risk of physical harm to persons or property by any act which serves no lawful and reasonable purpose of the offender."

A complaint was filed in the Hamilton County Municipal Court charging the offense, the body of which reads as follows:

"Patrolman Dale A. Koch, being first duly cautioned and sworn, deposes and says that Paul Wendall Hubbard, on or about the 31st day of January, 1976, in the City of Springdale, Hamilton County and State of Ohio, did recklessly cause annoyance to another by making an offensively course utterance contrary to and in violation of Section 648.04(A) of the Springdale Codified Ordinances."

To this charge, the defendant entered a plea of no contest. Thereafter, the court inquired as to the facts and the following colloquy between the court and the assistant prosecutor occurred:

"The Court: What was said, do you know?

"Mr. Malloy: The arrest record indicates that the subject became loud and abusive while in a public place. He was warned several times, at which time, he persisted in such activity. As far as the actual words that were conveyed, it would be hearsay. On prior discussion with the prosecuting witness in this case—.

"The Court: No, you can tell me what the prosecuting witness said.

"Mr. Malloy: The prosecuting witness indicated that

the defendant called him, Dale Koch, and another officer, Michael Laage, 'fucking pigs' and was indicating to the general vicinity that this was police brutality and he repeatedly, after warning to desist, repeatedly called them 'fucking pigs.' "

Defendant assigns two errors, which stated succinctly are: (1) Section 648.04(A) of the codified ordinances of the city of Springdale is unconstitutional and (2) the complaint failed to allege that the utterance constituted fighting words and, therefore, the complaint stated no charge and the court erred in finding the defendant guilty of his no contest plea.

We rely on two principal cases in arriving in our decision: *Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d 107 and *City of Cincinnati* v. *McElfresh,* unreported, No. C-75122, Court of Appeals for the First District, rendered March 22, 1976.

The Supreme Court of Ohio, in *Cincinnati* v. *Karlan, supra,* upheld a conviction under the then existing Cincinnati ordinance, which read as follows:

"It shall be unlawful for any person to wilfully conduct himself or herself in a noisy, boisterous, rude or insulting or other disorderly manner with the intent to abuse or annoy any person or the citizens of the city or any portion thereof."

The court in *Karlan* had before it a factual situation substantially as follows: A police officer was removing a knife from the possession of a young male at one of the local high schools when the defendant in that case, an eighteen year old female, made the remark, "those assholes don't have no right to do that. The bastards do nothing but harassing." She then approached one of the officers and said to his face: "All you damn pigs want is more money" and she was arrested.

The court in *Karlan* said, at page 109-110:

" '* * * [W]here the words of rudeness or insult reach a point where they become "fighting words" they may be regulated by criminal statute and their utterance may be constitutionally punished.' * * * For, where epithets

used in a public place and wilfully directed at those who can hear them, are likely to provoke the average person to an immediate retaliatory breach of the peace, they are fighting words and the utterance thereof may be punished as a criminal act."

In our view, the former Cincinnati ordinance considered in *Karlan* was, if anything, less precise and more susceptible to constitutional attack than the Springdale ordinance here in question. What we understand the Supreme Court of Ohio to say is that the ordinance may constitutionally punish utterances of "fighting words" notwithstanding the United States Supreme Court's definition of "protected speech."

This court, then, in *City of Cincinnati* v. *McElfresh, supra,* had before it the new Cincinnati Municipal Code Section 910-3a, which is identical to R. C. 2917.11(A) and to Section 648.04(A) of the Springdale ordinances.

The Court said:

"In our opinion Code 910-3(a) is less vague than Code 910(d) (4) which the Ohio Supreme Court in *Karlan* held to be constitutional. * * * We conclude that Cincinnati Code 910-3(a) punishes 'fighting words' and is not susceptible to application to protected speech."

A review of Section 648.04(A) illustrates that each subparagraph except (2) contains words which explicitly address "fighting words" or turbulent behavior. In fact, the section taken as a whole clearly directs its thrust to such behavior. Only in the subparagraph under review is such conduct not expressly proscribed. In considering an enactment which is pregnant with the proscription against conduct likely to provoke a violent response, but in which the legislative authority has inadvertently failed to include such language in one of its five subsections, we feel that it would be rational to assume that the General Assembly did not intend to interject an unconstitutional prohibition of protected language in the middle of the statute or ordinance. Rather, we feel that proscription against conduct likely to provoke a violent response is implicit in this subsection in view of its arrangement in the ordinance. As

we construe the constitutionality of this ordinance, we will not declare a legislative enactment unconstitutional in this area where there is a rational way to preserve its constitutionality much as the Supreme Court did in *Karlan*. Therefore, we hold that the language of the ordinance should be read so as to limit its application to only those acts which are not constitutionally protected.

We turn next to a consideration of the effect of the defendant's no contest plea in the court below. Crim. R. 11(B)(2) provides, in pertinent part, as follows:

"The plea of no contest is not an admission of defendant's guilt but is an admission of the truth of the facts alleged in the indictment, information or complaint * * *."

Section 5 (B) of Article IV of the Ohio Constitution provides, in part, as follows:

"The supreme court shall *prescribe rules governing practice and procedure in all courts of this state, which rules shall not abridge, enlarge or modify any substantive right.* * * *" (Emphasis added.)

We then look to the pre-rule code, specifically R. C. 2937.07, to determine its application, if any, on the facts under consideration. That section reads, in part, as follows:

"If the plea be 'no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate *may make finding of guilty or not guilty from the explanation of circumstances and if guilt be found impose or continue for sentence accordingly.* * * *" (Emphasis added.)

The question then presented is: Does the criminal rule supercede R. C. 2937.07 because it is a procedural statute, or contrarily, does the section includes substantive provisions of the law which survive the rule? In our opinion, the emphasized language of the statute contains a substantive right. In other words, we believe that a defendant has a substantive right to be discharged by a finding of not guilty where the statement of facts reveals a failure to establish all of the elements of the offense. If this were not so, assuming the complaint or indictment to be

properly worded, the trial court would be bound to ignore a failure of the facts to establish a necessary element of a case and simply make the finding of guilty in a perfunctory fashion. We do not believe that is what the rule intends, and its difficult for us to conceive of a more substantive right than to be found not guilty under proper circumstances.

Thus, since we find Section 648.04(A) of the Springdale Codified Ordinances to be constitutional, it follows then that if "fighting words" are implicit in the language of the ordinance proscribing certain conduct and a complaint alleges a violation of the ordinance in the language of the ordinance the complaint is not deficient.

We are aware of our pronouncement in *State* v. *Miller,* unreported, Court of Appeals for the First District, No. C-75383, rendered in 1976. However, in that case this court did not rule on the constitutionality of Section 910-3 (a), but rather reached its conclusion on the basis of the facts presented. We said in that case:

"The assignment of error is sustained, the judgment reversed and Miller discharged because of the particular name calling and the context in which it here occurred; however, use of the identical epithet in other verbal or factual contexts could well amount to conduct unprotected by the First and Fourteenth Amendments."

Having found the defendant's conduct in the instant case to be conduct unprotected by the First Amendment, and the proscription of that conduct contemplated and encompassed by the ordinance under which the defendant was charged, we find both of the assignments of error to be without merit and they are overruled.

We affirm the the conviction and judgment of the court below.

*Judgment affirmed.*

PALMER. P. J., concurs.

BLACK, J., dissents.

BLACK, J., dissenting. In my judgment, both assignments of error are well taken. The ordinance is unconstitu-

tionally vague and overbroad, and the complaint should be dismissed because it did not allege an offense, having omitted an essential element—"fighting words."

The procedural posture of this case is such that we can examine only the facts alleged in the complaint: that the appellant recklessly caused annoyance to another by making an offensively coarse utterance. Crim. R. 11(B)(2) states that a plea of no contest is an admission of the facts alleged in the complaint, and nothing more. The criminal rule supplants R. C. 2937.07, and thus eliminates those provisions of the statute which state that the judge may make a finding of guilty or not guilty from "the explanation of circumstances."

This conclusion—that a plea of no contest no longer permits an explanation of the circumstances applicable to the question of guilt of the charged offense or any lesser offense—is grounded on my opinion (not shared by my brothers) that in setting forth what pleas may be made, how they are made, what the effect of pleas of guilty or no contest is and what procedures shall be used in accepting pleas of guilty or no contest, the criminal rule governs "practice and procedure" and does not abridge, enlarge or modify any substantive right. These provisions state no more than how an accused person may assert his rights and defenses; they do not touch the defendant's rights and defenses themselves. For instance, if a defendant claims that he is not guilty of the charge, or that if he is guilty of any violation it is a lesser offense, he pleads not guilty and raises all issues in the case. If he wants to limit the issues, he can stipulate the undisputed evidence and present only the controverted issue for determination. The "right" to have the judge determine guilt or innocence from somebody's explanation of the circumstances is not of substance. It is procedural. Compare *Krause Admr. v. State* (1972), 31 Ohio St. 2d 132, at 145.

Crim. R. 11 made other significant changes in procedure. The plea of no contest was extended to felony cases, the plea of not guilty by reason of insanity was extended to misdemeanor cases, and pleas of former judgment

and of once in jeopardy were abolished. These issues are now raised by pretrial motions under Criminal Rule 12(B)(2).

Under the rule, a plea of no contest has several purposes: to contest the sufficiency of the underlying law or the charge or both (as in the instant case), and to preserve the defendant's claims of error in the overruling of pretrial motions (such as, motions to suppress identification, confessions or physical evidence).

Standing by itself, the language of the statute ("offensively coarse utterance") is vague and overbroad under a line of decisions by the United State Supreme Court. *Gooding* v. *Wilson* (1972), 405 U. S. 518. *Lewis* v. *City of New Orleans* (1974), 415 U. S. 130. The provisions used in this complaint are not limited to "fighting words" by the express terms of the legislative body. Other provisions of the ordinance are so limited; for instance, under subdivision (3), insulting, taunting or challenging another person is a violation if done "under circumstances in which such conduct is likely to provoke a violent response." But this limitation is not found in division (2) of the ordinance under which the instant charge was made. The courts cannot add to a statute that which the legislature has obviously omitted. See *State, ex rel. Corrigan,* v. *Court of Common Pleas* (1976), 45 Ohio St. 2d 187, in which the Supreme Court held that a reference in connection with shock probation to "R. C. 2951.03 to 2951.09" did not include R. C. 2951.02, thus making it necessary for the legislature subsequently to adopt Amended House Bill 837 specifically including R. C. 2951.02 in the reference.

*Cincinnati* v. *Karlan* (1974), 39 Ohio St. 2d 107 is not, in my judgment, controlling. The gloss furnished by that case to the old Cincinnati ordinance cannot be extended so as to save every subsequent enactment against disorderly conduct. I do not read that decision as so broad and pervasive that it adds the element of "fighting words" to the Springdale ordinance. Further, the new ordinance is a new definition of prohibited activity, entirely different in structure, design and language. Courts should be bound

by the clear meaning of the language used by the legislature.

*City of Cincinnati* v. *McElfresh,* unreported, Court of Appeals for the First District, No. C-75122, decided March 22, 1976, is distinguishable from the instant case, in that there the court had before it not only the words used by the defendant, but also proof as to the provocative and explosive circumstances in which they were uttered, thus supporting the court's conclusion that the utterance constituted fighting words. In the instant case, because the plea of no contest admits no more than the facts alleged in the complaint, the circumstances in which the words were spoken were not before the court on the question of guilt, and the court should have limited itself to the question of whether charging "offensively coarse utterance," and no more, constituted a constitutional charge.

Under the law of the land, it is not a constitutional charge.

If *McElfresh* cannot be distinguished on this ground, my interpretation of the decisions of both the Ohio and United States Supreme Courts constrains me to register herewith my dissent from that case.

The complaint does not state an offense, the essential element of an explosive incident in which the offensively coarse utterance became "fighting words" being absent.

I neither condone nor approve the language used by this appellant. Both the ordinance and the complaint were overbroad, and therefore, I have not reached the question of whether the language appellant used, in whatever the circumstances may have been, was protected speech under the First and Fourteenth Amendments. The Supreme Court of the United States has extended constitutional protection to speech which may be repulsive and offensive to a great many people, even a majority of citizens. Their purpose has been to retain for the American people one of the pillars of our structure of individual freedoms. As stated by Justice Herbert in *Karlan, supra,* at 109-110:

"A majority of the United States Supreme Court has said that no matter how rude, abusive, offensive, derisive,

264

vulgar, insulting, crude, profane or opprobrious spoken words may seem to be, their utterance may not be made a crime unless they are fighting words, as defined by that tribunal. Furthermore, the court has stated that those descriptive words in and of themselves are constitutionally overbroad and must be rendered unsusceptible of application to protected speech by appropriate judicial decision."