[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ACCELERATED
 OPINION
This is an accelerated appeal taken from a final judgment of the Chardon Municipal Court. Appellant, Douglas G. Carleton, appeals from his conviction for driving while under the influence of alcohol following the denial of his motion to suppress evidence.
On the evening of May 8, 1997, Officer Christopher Smith ("Officer Smith") of the Bainbridge Township Police Department was on routine patrol. Shortly before 11:00 p.m., the police dispatcher notified those officers on duty of a possible drunk driver in a white minivan who had exited onto State Route 306 from U.S. Route 422. The source of the tip was another motorist who had called 1-800-GRAB-DUI after observing the minivan drive erratically.
Upon receiving the dispatch, Officer Smith proceeded southbound on State Route 306. Almost immediately, the officer saw a white minivan approaching from the opposite direction. As the two vehicles converged, Officer Smith saw the minivan veer off the right side of the roadway just before passing the police car. He turned around and began to follow the minivan northbound on State Route 306. After following the minivan for approximately .2 of a mile, the officer witnessed the motorist swerve over the right edge line again. At that point, he decided to initiate a traffic stop.
Appellant was the driver of the minivan. Officer Smith approached the driver's side window and asked appellant for his license and registration. Appellant appeared disoriented and confused as he fumbled for his wallet, but his license was not there. Eventually, appellant produced the license from a bag that was sitting in the front compartment of the minivan.
Officer Smith noted a strong odor of alcohol on appellant. He also observed that appellant had a flushed face and glassy, bloodshot eyes. The officer asked appellant how much he had to drink that evening. Appellant stated that he had consumed "two beers" at a Cleveland Indians baseball game. Appellant was returning home from the game with three minor children who were passengers in the minivan.
Officer Smith requested that appellant exit the vehicle. The officer then proceeded to administer a standard battery of field sobriety tests, including the horizontal gaze nystagmus ("HGN") test, the walk and turn test, and the one-legged stand. Appellant performed poorly on all three. As a result, Officer Smith placed appellant under arrest for driving while under the influence of alcohol. After being transported to the police station, appellant registered .209 on the BAC Datamaster breath-alcohol machine.
Appellant was subsequently issued traffic citations for driving while under the influence of alcohol in violation of R.C.4511.19(A)(1), driving with a prohibited concentration of alcohol in his breath in violation of R.C. 4511.19(A)(3), and failure to drive upon the right half of the roadway in violation of R.C.4511.25. Officer Smith also swore out a complaint against appellant for endangering children in violation of R.C.2919.22(C)(1).
On June 2, 1997, appellant filed a motion to suppress all of the evidence obtained against him. As grounds for the motion, appellant claimed that Officer Smith initiated an unconstitutional traffic stop. In addition, appellant maintained that the police failed to take the necessary steps to ensure the accuracy and reliability of the BAC Datamaster machine, thereby rendering the breath-alcohol test results inadmissible in a court of law.
The motion came on for a hearing in the trial court on July 28, 1997. Officer Smith and the senior police operator of the BAC Datamaster machine testified on behalf of the state. Following the hearing, the trial court denied the motion to suppress.
Appellant thereafter pled no contest to driving while under the influence of alcohol, and the trial court entered a judgment of conviction against him for violating R.C. 4511.19(A)(1). The other three charges were dismissed. The trial court ordered appellant to serve ten days in jail and to pay a $750 fine with the remainder of the sentence suspended.
From this judgment, appellant timely appealed to this court. He now asserts the following assignments of error:
 "I. The trial court erred as a matter of law in finding that the arresting officer had a reasonable, articulable suspicion to justify a constitutional stop of the appellant.
 "II. The trial court erred as a matter of law in failing to suppress the breath-alcohol concentration test results.
 "III. The trial court erred as a matter of law in failing to suppress the appellant's HGN test results."
In his first assignment of error, appellant posits that the trial court erred by denying his motion to suppress because Officer Smith did not have a reasonable, articulable suspicion of criminal activity upon which to effect the traffic stop. If the stop was illegal, then the trial court should have suppressed all of the evidence obtained against appellant, including the results of the roadside sobriety tests and the BAC Datamaster analysis conducted at the police station.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284,288; State v. DePew (1988), 38 Ohio St.3d 275, 277; State v.Fanning (1982), 1 Ohio St.3d 19, 20.
On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592;State v. Guysinger (1993), 86 Ohio App.3d 592, 594; State v.Klein (1991), 73 Ohio App.3d 486, 488; Willowick v. Sable (Dec. 12, 1997), Lake App. No. 96-L-189, unreported, at 16, 1997 Ohio App. LEXIS 5562. After accepting such factual findings as accurate, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. Retherford, 93 Ohio App.3d at 592; Klein,73 Ohio App. 3d at 488; State v. Green (Feb. 6, 1998), Lake App. No. 97-L-085, unreported, at 11, 1998 Ohio App. LEXIS 425.
In the case sub judice, there is no doubt that Officer Smith's conduct is subject to constitutional scrutiny. TheFourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." By its very terms, the Fourth Amendment is only triggered by a "search" or a "seizure." In this case, appellant was the subject of a traffic stop. A stop of a motorist in transit constitutes a seizure for Fourth Amendment purposes. State v. Durfee (Mar. 6, 1998), Lake App. Nos. 96-L-198 and 96-L-199, unreported, at 5, 1998 Ohio App. LEXIS 865.
Appellant phrases his first assignment to suggest that Officer Smith did not have a "reasonable, articulable suspicion" to justify the traffic stop of his vehicle. According to appellant, whatever minor crossings of the right edge line took place were not so unreasonable as to give rise to a legitimate suspicion of criminal activity.
An investigatory stop occurs when a police officer justifiably conducts an investigative detention of an individual based upon a reasonable and articulable suspicion that the individual either is currently engaged in criminal activity or is about to engage in such activity. In order for an investigatory stop to fall within constitutional parameters, the police officer must be able to cite articulable facts that give rise to reasonable suspicion of criminal behavior. Terry v. Ohio (1968), 392 U.S. 1, 21. In the context of a traffic stop, the police officer must have reasonable and articulable suspicion that the motorist is operating a vehicle in violation of the law. Delaware v. Prouse (1979), 440 U.S. 648.
After reviewing the facts at bar, it is apparent that Officer Smith had more than reasonable suspicion upon which to stop appellant's minivan. Rather, the officer had probable cause to effect the stop based on a traffic code violation.
At the suppression hearing, Officer Smith testified as follows on direct examination by the prosecutor:
 "A. * * * Right before it passed me the defendant's vehicle veered off to the right side of the roadway. I then proceeded to follow the defendant's vehicle northbound on 306 through the intersection of Washington Street. I started to run a LEADS check on the plate. Defendant then proceeded by just up maybe two-tenths of a mile from Washington Street. The defendant proceeded to go out of the marked lanes of travel off to the right side of the roadway again. That's when I conducted my traffic [s]top."
"Q. At that time what did you stop him for?
"A. For driving out of [the] marked lanes of travel."
Thus, Officer Smith clearly indicated that he stopped appellant's minivan because he witnessed a traffic offense. By crossing over the right edge line twice within a short distance, appellant provided the officer with probable cause to subject him to a Fourth Amendment seizure via the roadside stop. See State v.Brummett (Mar. 28, 1997), Lake App. No. 95-L-163, unreported, at 5, 1997 Ohio App. LEXIS 1219 (holding that a stop was justified after a state trooper observed a car weave outside its lane of traffic onto the berm in violation of R.C. 4511.33).
In State v. Yemma (Aug. 9, 1996), Portage App. No 95-P-0156, unreported, at 6-8, 1996 Ohio App. LEXIS 3361, we stated:
 "This court has repeatedly held that a minor violation of a traffic regulation * * * that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation. * * *
 "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." (Citations and footnote omitted.) See, also, Brummett, 1997 Ohio App. LEXIS 1219, at 5-6 (citing Yemma).
Therefore, when a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation. Upon stopping the vehicle, the officer may subsequently perceive specific and articulable facts indicating that the driver is intoxicated. If the officer has a reasonable suspicion that the driver is intoxicated, the officer may request that the driver step out of the vehicle for the purpose of conducting field sobriety tests. Based on the outcome of such tests, the officer may ultimately obtain probable cause to arrest the driver for operating a motor vehicle while under the influence of alcohol.
In the instant matter, Officer Smith stopped appellant's vehicle for straying outside of its marked lane of travel. The officer ended up citing appellant for a violation of R.C. 4511.25, although he probably should have charged appellant with violating R.C. 4511.33 based on his testimony at the suppression hearing. The former statute proscribes what is commonly known as driving "left of center," while the latter statute encompasses "marked lanes" violations.
The fact that Officer Smith cited appellant for a violation of R.C. 4511.25, instead of R.C. 4511.33, does not affect the constitutionality of the initial traffic stop. This court has previously held that a traffic stop was valid even though the police officer mistakenly cited the defendant with a marked lanes violation, rather than a failure to drive on the right side of the roadway (i.e., left of center). See State v. Lillstrung (Sept. 18, 1998), Lake App. No. 97-L-290, unreported, at 10-14, 1998 Ohio App. LEXIS 4374. See, also, Mason v. Rischar (Aug. 21, 1995), Warren App. No. CA94-08-072, unreported, at 2, n. 1, 1995 Ohio App. LEXIS 3411 (holding that no prejudice resulted when a police officer mistakenly listed R.C. 4511.25, instead of R.C. 4511.33, as the section number on a traffic citation for driving outside the marked lanes of travel).
Although Officer Smith may have cited an incorrect statute on the traffic ticket, the fact remains that he witnessed appellant commit an infraction by weaving over the right edge line twice within a short distance. This provided the officer with probable cause to perform the traffic stop.
One final observation is in order. The traffic stop was constitutionally valid even if Officer Smith stopped appellant's vehicle under the pretext of citing him for a marked lanes violation, but with the ulterior motive of checking to see if appellant was driving while intoxicated.
The United States Supreme Court has unanimously held that the reasonableness of a traffic stop does not depend upon the police officer's motive in making the stop. Whren v. United States
(1996), 517 U.S. 806. The Supreme Court of Ohio has also held that the stop of a vehicle based on probable cause that a traffic violation has occurred is not unreasonable under theFourth Amendment "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson (1996),76 Ohio St.3d 3, syllabus. Thus, notwithstanding any ulterior motive that Officer Smith may have possessed, the traffic stop was constitutionally permissible because probable cause existed to believe that appellant committed a traffic offense.
On review, it is apparent that the trial court did not err in concluding that the traffic stop was constitutional. Appellant's first assignment is without merit.
Before addressing the merits of the remaining two assignments, it would be worthwhile to review the standard for adjudicating a defendant guilty following a no contest plea. A plea of no contest is not an admission of the defendant's guilt, but rather is an admission of the truth of the facts alleged in the indictment, information, or complaint. Crim.R. 11(B)(2); State exrel. Stern v. Mascio (1996), 75 Ohio St.3d 422, 423. Under such a plea, the state is not required to prove each element of the crime charged beyond a reasonable doubt. Instead, the no contest plea simply allows the trial court to make a determination of guilt based on the explanation of circumstances required by R.C.2937.07.[1] See, also, Cuyahoga Falls v. Bowers (1984),9 Ohio St.3d 148, syllabus (holding that "[t]he provision in R.C.2937.07 requiring an explanation of circumstances following a plea of no contest has not been superseded by the enactment of Crim.R. 11" because the statute confers a substantive right); Springdalev. Hubbard (1977), 52 Ohio App.2d 255, 259-260.
By pleading no contest, therefore, a defendant admits the truth of the matters asserted in the indictment, information, or complaint. The question is not whether there is actually evidence to prove each element of the offense charged beyond a reasonable doubt. Instead, the relevant inquiry is whether the explanation of circumstances offered by the state contains sufficient facts toestablish the existence of all the essential elements of theoffense. State v. Wood (1996), 112 Ohio App.3d 621, 626. Pursuant to R.C. 2937.07, a defendant who pleads no contest has a substantive right to be acquitted where the prosecutor's statement of facts (i.e., explanation of circumstances) fails to substantiate all the elements of the crime. Id.; State v. Gilbo
(1994), 96 Ohio App.3d 332, 337.
With the above discussion in mind, we turn now to appellant's second assignment of error in which he proposes that the trial court erred by failing to suppress the results of the BAC Datamaster test. He sets forth two grounds upon which the trial court should have thrown out the analysis of his breath-alcohol concentration: (1) the police failed to check the calibration of the BAC Datamaster machine within the time allowed by the Ohio Administrative Code; and (2) the police failed to conduct the radio frequency interference survey in accordance with the provisions of the Ohio Administrative Code.
A review of the record indicates that appellant was initially charged with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1) and driving with a prohibited concentration of alcohol in his breath in violation of R.C.4511.19(A)(3). He pled no contest to the former charge, while the latter was dismissed.
Even assuming arguendo that appellant is correct in claiming that the BAC Datamaster results should have been suppressed, it is irrelevant for purposes of this appeal. The breath-alcohol test was only necessary to prove a violation of R.C. 4511.19(A)(3). This charge, however, was dismissed.
In this appeal, appellant stands convicted of violating R.C.4511.19(A)(1), not R.C. 4511.19(A)(3). Again, we reiterate that appellant's conviction did not stem from a jury or bench trial, but rather from a no contest plea. If appellant had been convicted following a trial, then the potential inadmissibility of the BAC Datamaster test may have had an impact on the weight of the evidence.
Although a blood-alcohol analysis confirming that appellant was legally intoxicated would have been helpful to support a conviction under R.C. 4511.19(A)(1), it was not necessary to establish a violation of that division of the statute under a no contest plea. Consequently, we need not consider whether the results of the BAC Datamaster test should have been admissible. Appellant's second assignment is, in essence, a moot point.
In his third assignment of error, appellant maintains that the trial court erred in failing to suppress the results of the HGN test performed on him. According to appellant, the testimony given by Officer Smith at the suppression hearing demonstrated that the officer did not employ proper technique in administering the HGN test.
Again, even assuming for the sake of argument that Officer Smith improperly performed the HGN test, we fail to see how this resulted in reversible error. The HGN test was only one component of Officer Smith's testimony. If the trial court had ruled that the evidence relating to the HGN test should be excluded, the state still had ample admissible evidence upon which to prosecute appellant for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). This evidence included the fact that appellant's minivan crossed over the right edge line twice, physiological factors (e.g., strong odor of alcohol, bloodshot eyes), and Officer Smith's account of how appellant failed the walk and turn test and the one-legged stand.
Because appellant pled no contest, the state could invoke all of this evidence when presenting its explanation of circumstances as required by R.C. 2937.07. In other words, there were sufficient facts to establish the existence of all the essential elements such that the trial court could find that appellant violated R.C. 4511.19(A)(1), notwithstanding the HGN test. Thus, even if the trial court erred by not suppressing Officer Smith's testimony about the HGN test, the resulting error was harmless under the circumstances.
Based on the foregoing analysis, appellant's assignments of error are not well-taken. Accordingly, the judgment of the trial court is affirmed. _______________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J.,
NADER, J., concur.
[1] R.C. 2937.07 provides in part:
 "If the plea be `no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate may make [a] finding of guilty or not guilty from the explanation of circumstances, and if guilt be found, impose or continue for sentence accordingly." (Emphasis added.)