OPINION
Defendant-appellant, Shawn MacIntyre, appeals his conviction for menacing in the Middletown Municipal Court. The decision of the trial court is affirmed.
On October 19, 1999, Cheryl Wood filed a complaint with the Middletown Police Department. In the complaint, Wood alleged that her former boyfriend, MacIntyre, had harassed her after she had told him to leave her alone at home and at her place of work. Wood stated that on October 12, 1999, MacIntyre told her that he had several dreams in a row where Wood had been raped at work. Afterwards, Wood received what she perceived as a "perverted letter" (hereinafter referred to as "the note"), which made her afraid to go to work because MacIntyre knew that she was lone there for certain periods of the day. Wood further alleged that MacIntyre had told her on several occasions that the only way to get rid of him was to kill him. As a result, Wood alleged that she was afraid of MacIntyre and afraid for her safety because she believed that she would arrive at work one day and find him there.
The city of Middletown charged MacIntyre with domestic violence in violation of Middletown Codified Ordinance 636.17(a), a fourth-degree misdemeanor. The matter proceeded to a hearing on a no contest plea for domestic violence.
At the hearing, the city presented testimony by Wood. According to Wood, she had known MacIntyre for approximately two and one-half years. She had dated MacIntyre and they had sexual relations. They did not live together but MacIntyre would come over to her home and spend the night and she would go over to his home and spend the night. After the break-up of their relationship in the summer of 1999, Wood asked MacIntyre to leave her alone. MacIntyre, however, would continue to periodically stop by Wood's place of work, Vista Vending, located at 2911 Cincinnati-Dayton Road in the city of Middletown, Butler County, Ohio. Each time, Wood told MacIntyre to leave her alone.
On October 19, 1999, Wood found what she characterized as a provocative note on the windshield of her car at work. The note, which was admitted into evidence, is a five-page letter that graphically describes sexual acts between two people. Although the note was signed "John," Wood recognized the handwriting in the note to be the handwriting of MacIntyre. Wood testified that when she received the note, it "scared the hell out of [her]," and that she "feared for [her] safety." As a result, she filed a complaint with the police.
Office Jerry Mossman of the Middletown Police Department testified that he took a complaint from Wood at her residence in Middletown on October 19, 1999, the same day she received the note. At that time, Mossman testified that Wood was "visibly upset, shaken, [and] crying."
The prosecution then moved to amend the complaint to charge menacing since MacIntyre and Wood were not family or household members. The trial court granted the motion without objection. MacIntyre then moved the trial court for acquittal pursuant to Crim.R. 29, asserting that the only real evidence against him was the note and it did not contain a threat of physical harm under the elements of menacing. The trial court overruled the motion.
MacIntyre then gave testimony where he admitted that he wrote the note. According to MacIntyre, he left the note for Wood under her pillow about a year ago. He characterized the note as "just a love note." After the break-up of their relationship, MacIntyre testified that Wood threatened to get even with him by having him put in jail or prison, or having him killed by her former husband.
Following MacIntyre's testimony, the trial court stated that it "can make a finding beyond a reasonable doubt that there was menacing here." By its May 26, 2000 entry, the trial court stated that MacIntyre, who was represented by counsel, entered a no contest plea to the charge of menacing. The trial court found MacIntyre guilty of menacing and fined him $250 and court costs. The trial court sentenced MacIntyre to thirty days in jail with the thirty days suspended conditioned on him not reappearing in court and staying away from Wood.
MacIntyre appeals, raising a single assignment of error:
 The Trial Court erred in finding Appellant guilty of menacing.
 MacIntyre contends that the trial court erred by finding him guilty of menacing when there was insufficient evidence as to the material element of threatened physical harm. MacIntyre concedes that the note graphically describes future sexual acts between himself and Wood, and that the note produced sincere anxiety in Wood. However, MacIntyre argues that the note was not a threat of physical harm; it was a just a proposal for consensual sexual relations.
Both the city and MacIntyre agree that this court must follow the standard of review announced in State v. Jenks (1991), 61 Ohio St.3d 259
. In Jenks, the court stated that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Jenks,61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
In the present case, MacIntyre focuses his appeal of the sufficiency of the evidence and raises no issue concerning the validity of his plea. A no contest plea is "not an admission of defendant's guilt, but is an admission of the facts alleged in the * * * complaint." Crim.R. 11(B)(2). "When a defendant enters a plea of no contest, the defendant waives several constitutional rights, including the right to have the prosecution prove its case beyond a reasonable doubt." State v.Hurchanik (Mar. 16, 1998), Warren App. No. CA97-05-050, unreported, at 2, citing State v. Pernell (1976), 47 Ohio App.2d 261.
R.C. 2937.07, however, confers a substantive right in misdemeanor cases to an explanation of the circumstances surrounding the charge before a defendant can be found guilty. Cuyahoga Falls v. Bowers (1984),9 Ohio St.3d 148, 150. The explanation of circumstances must contain sufficient information to support all the essential elements of the offense and may be taken from sworn testimony. Id.; State v. Ovens
(1974), 44 Ohio App.2d 428, syllabus. Otherwise, the defendant has a substantive right to be discharged by a finding of not guilty. Bowers at 150, citing Springdale v. Hubbard (1977), 52 Ohio App.2d 255, 259-260.
Menacing under Middletown Codified Ordinance 6236.05 is identical to R.C. 2903.22 and provides that "[n]o person shall knowingly cause another to believe that the offender will cause physical harm to the person * * *." "`Physical harm' to persons means any injury, illness, or other physiological impairment, regardless of its gravity or duration." Middletown Codified Ordinance 606.01(1); R.C. 2901.01(A)(3).
A threat of physical harm does not need to be "overt words only, it can be implied through actions and subtly through words." State v. Hoaglin, 1993 Ohio App. WL 85643, at *3 (Mar. 25, 1993), Van Wert App. No. 15-92-15, unreported. "The key is whether the victim genuinely believes that he or she is facing physical harm to person or property." Niles v.Holloway, 1997 Ohio App. WL 665974, at *2 (Oct. 3, 1997), Trumbull App. No. 96-T-5533, unreported.
Here, the city elicited testimony from Wood and Officer Mossman concerning the effect of MacIntyre's conduct on Wood's state of mind. Wood testified about frequent unwanted visits from MacIntyre at her place of work. MacIntyre then left a note for Wood to find on her car that graphically described sexual acts between the two of them in the future. Upon receipt of the note, Wood was visibly shaken, upset, and crying. She testified that the note "scared the hell out of [her]" and that she "feared for [her] safety."
From the testimony of Wood and Mossman, it is evident that MacIntyre knowingly caused Wood to believe that she was in fear of physical harm. We find that the above evidence presented by the city was sufficient information to support all the essential elements of the offense. SeeBowers at 150. Furthermore, such evidence when viewed in a light most favorable to the prosecution was sufficient to support all the essential elements of menacing beyond a reasonable doubt. Accordingly, MacIntyre's assignment of error is overruled.
_________________________________VALEN, J.
YOUNG, P.J., and WALSH, J., concur.