OPINION
{¶ 1} The defendants-appellants, Scot and Tammy Myers, appeal the October 29, 2002 judgments of the Marion Municipal Court of Marion County, Ohio, finding both of them guilty of one count of child endangering.
 {¶ 2} The relevant facts are as follows. Around 1:30 p.m. on June 5, 2002, Kelly Ice, a 911 dispatcher for the Marion County Sheriff's Office received an "express dial tone" call from 190 Ruth Avenue in Marion, Ohio. An express dial tone acts as a 911 hang-up call. It enables those with disconnected telephone service to make an emergency 911 call despite having no telephone service. However, the dispatcher is unable to communicate with the caller. Instead, the emergency system will inform the dispatcher that the call is an express dial tone and will provide an address for the location of the call. As a result of this call, Sergeant Lee Blair of the Marion County Sheriff's Office was dispatched to the location of the call.
 {¶ 3} Upon his arrival, Sergeant Blair noticed a vehicle in the driveway, which he determined was registered to Scot Myers. After knocking on the door and receiving no answer, he began to examine the home's perimeter and discovered that both the front and back doors were locked, an air conditioner was running in one room, and there was a small open window in another room on the first floor. However, he could not view anyone in the room from this window, but he noticed that a television was playing cartoons in the room. At some point, Deputy Richard Hare of the sheriff's office arrived to assist Sergeant Blair. Sergeant Blair also spoke with a neighbor who came out of her home. The neighbor told him that she thought that the appellants had left the home earlier that day but that they also had children, but was not certain if they had gone with their parents. The neighbor also told Sergeant Blair the last name of the landlord, who lived on the next street.
 {¶ 4} The dispatcher contacted the landlord, who provided the officers with a key to the home. The officers again knocked on the door, but no one answered. They then unlocked the front door with the key and entered. After looking in a few rooms, Sergeant Blair discovered the appellants' young daughter, Cammy, age eight, crouched behind a washing machine. When asked, Cammy told the officers that her two brothers were upstairs. The officers then discovered a two-by-four wedged between the floor and the doorknob to the door leading upstairs. Upon removing the board, Deputy Hare opened the door and called for the two boys, ages eleven and six, to come downstairs, which they did. One of the boys informed the officers that one of their parents had a dentist appointment, perhaps in Columbus, Ohio, and that both parents had gone to the appointment. Children Services was then contacted to take care of the children.
 {¶ 5} As a result of this incident, complaints were filed against each appellant on June 17, 2002. The complaints charged the appellants with child endangering in violation of R.C. 2919.22(A), first degree misdemeanors. Both appellants pled not guilty and filed motions to suppress the June 5, 2002 search of their home because the search was conducted without a warrant. A joint hearing was held on these motions on August 15, 2002. During this hearing, Sergeant Blair, Deputy Hare, and Dispatcher Ice testified. On September 20, 2002, the trial court overruled the appellants' motions. Both appellants then changed their pleas to no contest as to one count each of child endangering. The trial court found the appellants guilty and sentenced them accordingly. These appeals followed, and the appellants now assert two assignments of error.
 The trial court erred to the prejudice of Defendants-Appellants by finding exigent circumstances justified the warrantless entry and search of their residence.
 The trial court erred to the prejudice of Defendants-Appellants by finding that the State proved beyond a reasonable doubt that they were each guilty of endangering children.
 First Assignment of Error {¶ 6} In their first assignment of error, the appellants maintain that the trial court improperly found that exigent circumstances existed to justify the warrantless entry of their home by the police. In support of this argument, the appellants contend that the search was not permissible as no exigent circumstances warranting an intrusion into the privacy of their home existed. At issue is whether the requisite exigent circumstances existed on June 5, 2002, to justify the officers' entry into the Myers home.
 {¶ 7} When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presented. State v. Johnson (2000), 137 Ohio App.3d 847, 850. An appellate court may not reverse a trial court's ruling on a motion to suppress if it is supported by substantial and credible evidence. Id.
 {¶ 8} The well settled law under the Fourth and Fourteenth Amendments as interpreted by the United States Supreme Court is that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347,357; Coolidge v. New Hampshire (1971), 403 U.S. 443, 454-455; Chambersv. Maroney (1970), 399 U.S. 42, 51. The Court has further determined that "[b]efore agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." Welsh v. Wisconsin (1984), 466 U.S. 740, 750. "Exigent circumstances" denotes the existence of "`real immediate and serious consequences'" that would occur were a police officer to "`postpone action to get a warrant.'" Id. at 751, quoting McDonald v.United States (1948), 335 U.S. 451, 459-60 (Jackson, J., concurring). This includes situations where there is a "need to protect or preserve life or avoid serious injury." Mincey v. Arizona (1978), 437 U.S. 385,392.
 {¶ 9} The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Warden, MarylandPenitentiary v. Hayden (1967), 387 U.S. 294, 299. Thus, the exigent circumstances exception to the warrant requirement applies when the police have a reasonable basis to believe someone inside the premises requires immediate aid. Parma v. Jackson (1989), 58 Ohio App.3d 17, 18. When the officers in question have reasonable grounds upon which to believe that an emergency exists, they have a duty to enter the premises and investigate, provided that the warrantless search is "`strictly circumscribed by the exigencies which justify its initiation.'" State v.Applegate (1994), 68 Ohio St.3d 348, 350, quoting Terry v. Ohio (1968),392 U.S. 1, 26. Reasonable belief is assessed from the facts and circumstances known to the officers and from their point of view. Statev. Robinson (1995), 103 Ohio App.3d 490, 496.
 {¶ 10} In the case sub judice, all three witnesses testified that a call to 911 is inherently an emergency. However, they also testified that many non-emergency calls, including express dial tones and hang-ups, are placed to 911 on an annual basis. In addition, Dispatcher Ice testified that many times the express dial tone calls are placed by children playing with the telephone. Most of these non-emergency calls are usually taken care of by the dispatcher through direct telephonic communication with the person who has placed the call. Although these are disposed of without the need to dispatch officers to the location of the call, an express dial tone can only be cleared by responding to the scene and ascertaining the nature of the call because there is no ability to communicate with an express dial tone caller over the telephone.
 {¶ 11} The appellants maintain that the quantity of non-emergency calls to 911 greatly decreases any reasonable belief that an officer may have that someone at the location of the call is in need of immediate aid. In addition, the appellants contend that the officers had no cause to believe that someone was in need of aid upon arriving at the home because they did not hear any moans, cries, or other noises from inside that would lead the reasonable person to believe that there was some sort of disturbance. We disagree.
 {¶ 12} We refuse to base the reasonableness of a warrantless entry into a home from which a 911 call has originated, and the nature of which is unknown, on the percentage of these types of calls that are non-emergencies in nature. Rather, we find these types of calls to inherently be emergencies. In fact, the emergency of these situations only ceases once the emergency responder is able to ascertain whether someone is in need of aid. Once the responder discovers that no emergency exists, there is no need to further investigate. However, at times, this discovery can only be made by gaining entrance to the location from which the call was placed. The mere absence of sounds is not always a sufficient basis to determine whether someone in the home needs immediate aid, especially when other information exists that would lead one to reasonably believe that someone is inside the home. The person in need of aid could be unconscious or otherwise debilitated. In addition, there may be sounds of distress within the home but which are inaudible to those on the outside of the home.
 {¶ 13} Here, officers responded to the location of a 911 call, wherein no one could be contacted by phone to ascertain the nature of the call. In addition, no one responded to their repeated knocks on the door. Further, no one could be seen inside the home from the only point of visibility into the home, a small window located in one bedroom and positioned at the officers' head level, but they could hear a television and other unintelligible noises coming from inside the home. The officers also had information that children may have been inside the home and that their parents were not present. However, they had no knowledge as to whether anyone in the home was injured in some manner or the victim of a crime. Given these circumstances, the officers had a reasonable basis to believe someone needed immediate aid inside the home, and they acted reasonably in entering the home without a warrant.
 {¶ 14} To hold otherwise would place emergency personnel, including law enforcement officers, in a precarious situation. Requiring them to obtain a search warrant before entering a home when no one responds to their knocking and they have information that someone is most likely in the home could endanger lives in the event that an injured party needs immediate attention. Often even a short delay can mean the difference between life and death. Thus, given these facts, exigent circumstances existed to overcome the presumption of unreasonableness in the warrantless entry. Furthermore, the officers strictly limited their search to only those areas necessary to ascertain the nature of the emergency. Accordingly, the first assignment of error is overruled.
 Second Assignment of Error {¶ 15} In their second assignment of error, the appellants contend that the trial court erred in finding them guilty of child endangering beyond a reasonable doubt. In support of this contention, the appellants argue that the findings of guilt were against the manifest weight of the evidence. However, R.C. 2937.07 states: "If the plea be `no contest' or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate may make finding of guilty or not guilty from the explanation of circumstances[.]" In addition, Crim.R. 11 provides that a plea of no contest "is an admission of the truth of the facts alleged in the indictment, information, or complaint[.]" Thus, there is no weight to be determined. However, the appellants also note that the trial judge that found them guilty was not the same judge who presided over the suppression hearing and that whether the latter acting judge reviewed the evidence in this case before finding them guilty is unclear from the record.
 {¶ 16} When the court is confronted with a defendant who pleads no contest to a misdemeanor offense, it must determine whether the explanation of circumstances provided by the State constitutes the alleged offense. Cuyahoga Falls v. Bowers (1984), 9 Ohio St.3d 148, 150. Thus, "a no contest plea may not be the basis for a finding of guilty without an explanation of circumstances." Id. Rather,
 "a defendant has a substantive right to be discharged by a finding of not guilty where the statement of facts reveals a failure to establish all of the elements of the offense. If this were not so, assuming the complaint or indictment to be properly worded, the trial court would be bound to ignore a failure of the facts to establish a necessary element of a case and simply make the finding of guilty in a perfunctory fashion. We do not believe that is what the rule intends, and it is difficult for us to conceive a more substantive right than to be found not guilty under proper circumstances."
 Id., quoting Springdale v. Hubbard (1977), 52 Ohio App.2d 255, 259-260. In Bowers, the Ohio Supreme Court found that the record in that case was "silent as to whether the court based its decision on the documentary evidence in the file or whether it made its finding of guilty in the `perfunctory fashion' condemned in Springdale and now proscribed by this court." Bowers, 9 Ohio St.3d at 151. The court further held that
 the question [was] not whether the court could have rendered an explanation of circumstances sufficient to find appellant guilty based on the available documentation but whether the court made the necessary explanation in this instance. Our review of the record indicates that no explanation of circumstances took place, notwithstanding the availability of documentary evidence that might have been the basis for meeting the statutory requirement.
Id. Thus, the Court reversed Bowers' conviction. Id.
 {¶ 17} Here, the appellants were convicted of child endangering in violation of R.C. 2919.22(A). This section, in relevant part, states: "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The term "substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Further, "[t]he existence of the culpable mental state of recklessness is an essential element" of a violation of R.C. 2919.22(A). See State v. McGee
(1997), 79 Ohio St.3d 193, syllabus; State v. Martin (1999),134 Ohio App.3d 41, 43. R.C. 2901.22(C) states:
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 Thus, in this case, the explanation of circumstances had to show that the appellants (1) were the parents of a child under eighteen years of age, (2) violated a duty toward that child, (3) created a substantial risk to the safety of that child, and (4) acted with recklessness. See State v. Caton (2000), 137 Ohio App.3d 742.
 {¶ 18} In this case, the only information regarding the circumstances surrounding the charges against the appellants was provided during the suppression hearing, over which Judge Douglas Ebert presided. However, over two months later, Judge Brent Rowland found the appellants guilty. During the plea hearing, no explanation of the circumstances was given. In fact, nothing regarding the facts, including the complaints themselves, was read into the record at any time during their pleas. LikeBowers, the appellants' pleas must be vacated as neither the State nor the trial court provided any explanation that might have been the basis for meeting the requirements of R.C. 2937.07. Rather, the record was silent as to whether the court based its decision on the documentary evidence in the file and/or the suppression hearing or whether it made its findings of guilty in the "perfunctory fashion" condemned in Bowers. Although the evidence presented during the suppression hearing provided a sufficient basis to have found the appellants guilty of child endangering upon their pleas of no contest, the trial court did not provide the necessary explanation in this instance as is required by Bowers.[1]
Therefore, the second assignment of error is sustained.
 {¶ 19} For these reasons, the judgments of the Marion Municipal Court are reversed and the cause remanded to that court for further proceedings according to law.
Judgments reversed and cause remanded.
 WALTERS and CUPP, JJ., concur.
[1] Notably, the transcript of the suppression hearing was not even filed until February 13, 2003, well after the findings of guilty were made by the trial court.